GARL ET AL., APPELLEES, *v.* MIHUTA, APPELLANT.

[Cite as Garl v. Mihuta (1975), 50 Ohio App. 2d 142.]

(No. 2272—Decided June 18, 1975.)

*Ronald H. Gordon Co., L. P. A.*, for appellees.
*Mr. Virgil C. Burgett*, for appellant.

VICTOR, P. J. On January 6, 1970, an "Offer to Purchase-Acceptance" (hereinafter referred to as "agreement") was executed between plaintiffs-appellees and the owner of certain real estate located in Vermilion, Ohio. This agreement was also signed by defendant-appellant in his capacity of real estate broker. The portions of the agreement, pertinent to this case, are as follows:

"All Funds and Papers shall be placed in Escrow

with Loaning Institution within five days after financing is arranged. Escrow fee to be divided equally between Buyers and Sellers. Earnest money shall be promptly refunded and all Parties released, should Offer be rejected, should Title prove defective, and defects cannot be remedied, or should Buyers be unable to obtain financing.

"Present Owners shall give Clear Marketable Title to said property, evidenced by a good and sufficient Warranty Deed with full release of Dower, and proper Revenue Stamps, and furnish a Certificate of Title Guarantee, at their expense, in the name of the Buyers, in the full amount of the purchase price, showing title to be free and clear of all encumbrances, excepting easement and restrictions of record, if any, restrictions as to use and occupancy imposed of Federal, State, or Local Laws, Ordinances, or Regulations, and unpaid assessments for street improvements, etc., remaining as a charge against said property. Determination of lot lines shall be assumed by the Buyers. * * *

"Gabriel T. Mihuta, Realtor, 220 W. 9th Street, Lorain, Ohio shall be recognized as the Broker in this transaction, and shall receive, as a part of said transaction, upon completion thereof, a commission of 7.5% on the Gross Selling Price, to be paid from the purchase money, or in cash, should there be an exchange of properties, or should property be sold on land contract, in which case, execution of deeds, or signing of land contract shall be deemed completion of transaction. Should Broker act as Escrow Agent, he shall receive additional compensation therefor.* * *"

Subsequent to the execution of the agreement, defendant contacted a title guarantee company and requested a preliminary title report on the property involved in the agreement. By letter dated January 20, 1970, the title guarantee company informed defendant that the parcel of land was encumbered by a $26,500 mortgage which also covered an adjoining piece of property.

Defendant then notified the mortgagee bank of the proposed land contract and, according to defendant's testi-

mony, was told that plaintiffs were acceptable purchasers and the mortgagee bank would divide the mortgage. Defendant stated that he was instructed by the mortgagee bank to hire a surveyor to determine the boundary line between the two properties. This he did. No further action was taken by defendant to arrange payments to the mortgagee bank by plaintiffs.

A land contract was prepared by an attorney at the instruction of defendant and signed by plaintiffs and the sellers on February 3, 1970. The land contract contained a clause instructing plaintiffs to make payments to the mortgagee bank. Prior to the signing of the land contract, plaintiffs had given defendant a check for $2,844.46 as a down payment. Defendant accepted the check and deposited it in his trustee account. After the land contract was executed, defendant disbursed the funds according to the seller's instructions, retaining only his 7.5% commission.

When plaintiffs attempted to make their first payment to the mortgagee bank, the payment was refused and plaintiffs were informed that the mortgage was not going to be divided. After plaintiffs' unsuccessful attempts to determine to whom payments were due, they terminated the part-time occupancy of the real estate and sought to recover their down payment.

On April 27, 1970, the mortgagee bank brought a successful foreclosure action against the property. Plaintiffs were not informed of the action since the seller failed to record the land contract, as he was bound to do. See, R. C. 5313.01 et seq.

Plaintiffs then brought this action to recover the down payment on the land contract. At trial, before a judge sitting as trier of law and fact, the court found that the defendant was an escrow agent for both the purchasers and seller, and since defendant failed to require that a clause setting forth the encumbrances on the property be included in the land contract (as required by R. C. 5313.02), the defendant must refund the down payment. From this judgment, defendant appeals.

Defendant's assignments of error are:

"1. The judgment of the Court of Common Pleas entered on October 22, 1974, which was granted in favor of the plaintiffs should be reversed, as the same is contrary to the evidence.

"2. The judgment of the Court of Common Pleas entered on October 22, 1974, which was granted in favor of the plaintiffs should be reversed, as the same is contrary to law."

These assignments shall be consolidated for purposes of discussion and determination.

Defendant claims that he was the escrow agent of the seller, but was not the agent of the purchaser. He contends that he was not negligent in his actions toward plaintiffs and owes no money to the plaintiffs. The evidence, however, does not sustain defendant's contentions.

There were several exhibits which plaintiffs proffered into evidence, over the objection of defendant, but never ruled on by the court. For purposes of appeal, a court is bound to consider all evidence proffered unless the record discloses that the trial court sustained an objection to the admission of such evidence. *Craft v. Shroyer* (1947), 81 Ohio App. 253. Since no objections, as to the proffered exhibits, were sustained, they will all be considered as admitted into evidence.

The crux of the problem is that the "agreement" provided that earnest money would be refunded should the title prove defective and the defects could not be remedied. There is no question that defendant was aware of the mortgage on the property prior to the execution of the land contract. Thus, if the facts disclose that defendant maintained any fiduciary duty to plaintiffs, he would be liable to plaintiffs for failing to inquire whether a good title could be conveyed upon a termination of the land contract. Failure to make such a determination would render defendant liable to plaintiffs, not on the basis of negligence, but for his failure to act in good faith when dealing with plaintiffs.

The evidence shows that defendant knew of no escrow

agent representing plaintiffs; he held the plaintiffs' down payment until after the land contract was signed; he took initial steps to determine whether the sellers had marketable title and, upon discovering the mortgage, inquired about an arrangement whereby plaintiffs would make payments to the mortgagee bank; and, when disbursing the funds representing the down payment, defendant noted on the receipts "Francis-Garl transaction, G. F. Mihuta, Escrow Agent." Although the aforementioned facts are probably not sufficient to find that defendant was an "escrow agent" in the strict legal sense, there is no doubt that through his actions defendant placed himself in a fiduciary relationship vis a vis plaintiffs.

This court decided long ago that an escrow agent must refund the down payment, if the agreement requires this to be done, when certain conditions are not satisfied. *Kloser* v. *Davidson* (1937), 24 Ohio Law Abs. 338. Even though defendant may not have technically been an "escrow agent," his actions can only be interpreted to conclude that he was, at least, an agent for both parties. By placing himself in such a position, he owed a duty of utmost good faith to both parties. *Button* v. *Olson* (1928), 6 Ohio Law Abs. 162. This duty was breached when defendant failed to pursue the question of whether the seller had a marketable title. Had defendant pursued that course of inquiry, the evidence indicates, he would have found that the sellers could not have received a marketable title. Since plaintiffs lost their down payment as a result of defendant's breach of good faith, the trial court is correct in requiring that defendant reimburse plaintiffs.

*Judgment affirmed.*

MAHONEY and BRENNEMAN, JJ., concur.