Gary Van ZEE and Michael C. Thurman,
Plaintiffs and Appellees,

v.

Fred ASSAM, d/b/a Fred Assam Real
Estate, and Jake Fretty, Defendants
and Appellants.

No. 13985.

Supreme Court of South Dakota.

Argued May 24, 1983.

Decided July 6, 1983.

proached by Jake Fretty, an employee of Fred Assam d/b/a Fred Assam Real Estate (collectively referred to herein as appellant), in connection with the purchase of some investment property in Sioux Falls, South Dakota. The property was owned by Ronald P. Shawd (seller). Pursuant to a valid real estate listing, seller listed the property for sale with appellant.

Buyers subsequently inspected the property and decided to make an offer. Knowing the seller was asking $90,000 for the property, buyers authorized appellant to offer the seller $80,000, of which $15,000 would be the down payment. Buyers also wanted seller to be responsible for one-half of the title insurance expense. Appellant conveyed this offer to seller and returned with a counteroffer accepting the $80,000 purchase price but requiring an $18,000 down payment and refusing to pay one-half of the title insurance.

Following the counteroffer, appellant and buyers discussed the new terms. Buyers were advised not to let the "title insurance thing blow the deal because it was a good deal." Appellant further advised that "title insurance would be a waste of money" and counseled that buyers should "just forget about the title insurance." Following this advice, buyers signed a written purchase agreement and made a deposit. The agreement called for an $18,000 down payment and the remainder of the $80,000 purchase price to be paid in annual installments of $5,000, plus interest at nine percent, with a balloon payment for the remainder due on January 1, 1983.

While arranging financing for the down payment, one of the buyers was advised by his banker that it was always a good policy to procure title insurance on land transactions. Later that same day, buyers delivered a check for the balance of the down payment to appellant and also requested that appellant's secretary procure title insurance for them. Buyers also signed the contract for deed, which called for an abstract of title to be duly updated and certified, reflecting merchantable title, free and

Edwin E. Evans of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for plaintiffs and appellees.

John E. Burke, Sioux Falls, for defendants and appellants; N. Dean Nasser, Jr., Sioux Falls, on brief.

DUNN, Justice.

This is an appeal from a judgment awarding $20,000 with interest for damages sustained by buyers in a real estate transaction and from the trial court's denial of a motion for judgment notwithstanding the verdict. We affirm in part and modify in part.

In August of 1979, Gary Van Zee and Michael C. Thurman (buyers) were ap-

clear of encumbrances prior to the date of the balloon payment.

The title insurance preliminary commitment was returned to buyers over a month later and it showed that an interest of the National Bank of South Dakota (Bank) appeared as an encumbrance on the title. Seller had apparently purchased the land on a contract for deed and later assigned all his rights, title and interest in the contract to Bank as collateral for a loan of $27,560. Buyers confronted appellant with this information. At that point, buyers learned for the first time that seller had called Bank from appellant's office seeking permission to sell the property both prior to listing it and prior to selling it to buyers.

Aside from paying the now bankrupt seller the $18,000 down payment, buyers were required to pay Bank $27,560 in settlement of their claim, and $48,000 to the party who held the original contract for deed from seller. Thus, buyers paid $93,560 for the property which was originally sold to them for $80,000.

Buyers brought an action against appellant, seller and Bank. Seller, who had a stay from his petition in bankruptcy, and Bank were dismissed. The case against appellant was tried and a jury returned a verdict in the amount of $20,000 on the grounds of both negligence and breach of a fiduciary duty. The request for punitive damages was denied. Appellant now asks us to review the case.

Appellant presents us with five issues but we need only address three: (1) whether the trial court properly instructed the jury as to the nature of agency relationships; (2) whether the evidence was insufficient to establish an agency relationship and a breach of fiduciary duty; and (3) whether the evidence of damages entitles appellant to a remittitur. We address each in turn.

Appellant first contends the trial court erred in instructing the jury as to the requirements of an agency relationship and that the legal consequences of the breach of this relationship is negligence. There is no dispute that a written agency relationship existed between appellant and seller. The question presented to us is whether a similar relationship developed between appellant and buyers.

■■■ Whether one is an agent for another is normally a question of fact to be determined by the jury, *Barnard-Giles-Moses Co. v. Christy*, 41 S.D. 61, 168 N.W. 737 (1918), but before the matter may be submitted for jury determination, there must be competent evidence in the record to support it. *Wolf v. Graber*, 303 N.W.2d 364 (S.D.1981). In considering whether there is evidentiary support for an instruction, a reviewing court must give the evidence the most favorable construction it will reasonably bear. If there is some evidence bearing on the issue, a reviewing court will not disturb the trial court's giving of an instruction. *Sandhorst v. Mauk's Transfer, Inc.*, 252 N.W.2d 393 (Iowa 1977).

■■■ Appellant believes there was no evidence in the record to support giving these instructions. Appellant argues that he did not represent buyers in making an offer to the seller, that he did not assist buyers in procuring financing or the title insurance and, given buyers familiarity with real estate transactions, appellant asserts it is highly unlikely that buyers were relying on appellant's advice at the time they originally decided not to purchase title insurance. Buyers, on the other hand, assert there was an oral agreement whereby appellant would negotiate and convey an offer to seller.

Our review of the record convinces us that there was ample evidence in the record to support the giving of these instructions. In fact, it may well have been reversible error for the trial court to fail or refuse the requested instructions. *See Van Zee v. Sioux Valley Hospital*, 315 N.W.2d 489 (S.D. 1982); *Wolf v. Graber, supra.*

■■■ Appellant next contends that, even if the agency instructions were permissibly given, there was insufficient evidence to find such an agency relationship and that there was insufficient evidence introduced to establish the breach of a fiduciary duty. In resolving sufficiency of evidence issues

on appeal, this court should examine the record to determine only if there is competent and substantial evidence to support the verdict. We resolve all conflicts and draw all reasonable inferences therefrom in favor of the prevailing party. *State By & Through Dept., Etc., v. Richey Motor,* 296 N.W.2d 505 (S.D.1980).

As to the agency question, we believe appellant's consent to act on behalf of buyers in an agency capacity is supported by the record. First, these parties had prior real estate dealings in which appellant had represented buyers' interests. In fact, buyers had advised appellant to continue to look for additional commercial property to meet their investment needs. Second, appellant, knowing buyers' investment needs, approached buyers about this investment opportunity. Third, based on their prior course of dealings, buyers placed great trust in appellant's skills at meeting their investment needs. Fourth, buyers testified that they in effect authorized appellant to negotiate the transaction for them and, he did in fact negotiate the deal with seller. Finally, buyers and appellant extensively discussed the terms and ramifications of seller's counteroffer. Moreover, appellant advised buyers to accept the offer because it was a "good deal." We believe this evidence, when viewed in the light most favorable to upholding the jury verdict, does establish competent evidence to warrant the finding of an agency relationship.

Contrary to appellant's assertion, however, this holding does not mean that every listing broker can be sued successfully by every buyer for anything that goes wrong in the real estate transaction. Each case must be examined on the facts presented.

We next turn to appellant's assertion that there was insufficient evidence to find a breach of fiduciary duty owed to buyers. It is settled that a broker can be an agent for both parties, but in doing so he owes a duty of good faith and a duty to disclose all facts known to him or discoverable by him with reasonable diligence. *Hurney v. Locke,* 308 N.W.2d 764 (S.D. 1981); *Galyen v. Voyager Inn, Inc.,* 328

F.Supp. 1299 (W.D.Okl.1971); *see also, Garl v. Mihuta,* 50 Ohio App.2d 142, 361 N.E.2d 1065 (1975); *Wilson v. Lewis,* 106 Cal. App.3d 802, 165 Cal.Rptr. 396 (1980). Here, appellant was put on notice of a possible encumbrance on seller's property by seller's telephone calls to Bank. This was sufficient to place an agent on notice and thereby create a duty to investigate. One simple phone call by appellant would have established the amount of money due seller after first paying appellant's commission, Bank, and the original owners of the property. This phone call could have insured that the actual price paid would not exceed the original $80,000 purchase price. Instead, appellant made certain his commission was paid out of the down payment and failed to perform his fiduciary duty to buyers when they did not investigate Bank's assignment. When viewed in the light most favorable to upholding the verdict, the failure to inquire about possible encumbrances under these facts constituted a breach of fiduciary duty.

Finally, we address appellant's contention that the damages awarded in this case were excessive. Buyers' out-of-pocket payments in excess of the $80,000 purchase price were in the amount of $13,560; yet, buyers were awarded $20,000 in damages.

Buyers assert that the $6,440 difference between the out-of-pocket payments and the $20,000 award is attributable to their lost time, lost use and enjoyment of the property, and for attorney fees in negotiating a settlement with Bank. There is no evidence in the record to indicate that buyers lost any opportunity to sell or improve the property during the time that title was being perfected. Likewise, buyers' loss of time is too speculative to be a proper subject to be submitted to the jury on damages. The award of buyers' attorney fees and expense in the amount of $1,466 for negotiating a settlement with Bank is substantiated in the record by an exhibit and is a proper award of damages.

Appellant claims on appeal that the $20,-000 award should be further reduced by $1,900 because buyers escaped paying inter-

est on the original contract for deed to the original owners during the period the matter was in negotiation. We fail to find any evidence in the record where this item was properly preserved or submitted to the jury. Thus, the total award of damages is reduced to $15,026. As modified, the judgment of the trial court is affirmed.

All the Justices concur.