2000 SD 51

**Beverly Jean ROGEN and Alton Rogen, Plaintiffs and Appellants,**

v.

**Lezli Jean MONSON, Defendant and Appellee.**

No. 20925.

Supreme Court of South Dakota.

Argued Nov. 30, 1999.

Decided April 19, 2000.

Rehearing Denied May 25, 2000.

N. Dean Nasser, Jr. of Nassar Law Offices Sioux Falls, and Michael W. Day of Quinn, Day & Barker, Belle Fourche, for plaintiffs and appellants.

Curt Ireland, Rapid City, for defendant and appellee.

AMUNDSON, Justice.

[¶ 1.] Beverly and Alton Rogen (Rogens) appeal the denial of their motion for new trial and additur on the grounds that insufficient evidence existed for the jury verdict of $4,800 and claim error in admission of expert testimony. We affirm.

### FACTS

[¶ 2.] On October 15, 1995, Lezli Monson (Monson) was driving on I–90 in Pennington County, South Dakota. Monson was following a vehicle driven by sixty-four-year-old Beverly Rogen (Beverly). Beverly's husband Alton (Alton) was a passenger in the vehicle. Both automobiles eventually exited the interstate. As the cars approached the yield sign at the end of the exit, Monson looked back. As she looked forward, she saw that the brake lights were on and Beverly's car had stopped or nearly stopped. Monson was unable to stop her vehicle and collided with Beverly.

[¶ 3.] Both vehicles were operable after this collision and neither party claimed they were injured. After the police investigated, Beverly proceeded to drive home to the eastern part of the state.

[¶ 4.] Beverly claims that within two hours after the accident, pain began radiating in her lower back, down her right upper extremity and thigh, and in her right knee. On October 20, 1995, five days after the accident, Beverly went to see her family physician complaining of "pain in her lower lumbar spine with radiation to both buttocks and posterior leg down as far as knees." Beverly claims she needs a

back fusion and knee replacement as a result of the accident.

[¶ 5.] On October 20, 1997, Rogens filed a personal injury action against Monson claiming she was negligent in colliding with Rogens and injuring Beverly. At the conclusion of evidence, the trial court granted a directed verdict to Rogens on the issue of liability, finding that there was "no emergency, legal excuse or unavoidable accident or contributory negligence." The issue of damages was submitted to the jury. The jury returned a general verdict awarding Beverly $4,800 and Alton $0. Rogens filed a motion for new trial and motion for additur on December 17, 1998. Both motions were denied.

[¶ 6.] Rogens appeal, raising the following issues:

1. Was the evidence sufficient to support the amount of the verdict and judgment?

2. Was it error to allow the percentage causation opinions of Dr. Hoversten under *Daubert?*

3. Whether the trial court erred in failing to grant an additur or new trial on damages?

## DECISION

[¶ 7.] **1. Was the evidence sufficient to support the amount of the verdict and judgment?**

[¶ 8.] Due to the similarity of issues one and three, issue one will be addressed along with issue three.

[¶ 9.] **2. Was it error to allow the percentage causation opinions of Dr. Hoversten under *Daubert* ?**

■ [¶ 10.] Rogens argue that the trial court erred in overruling their objection to Dr. Hoversten's testimony, that Beverly's knee and back injuries were 95 percent related to her preexisting condition and only 5 percent related to the accident, because it lacked "proper foundation and factual predicate to permit his opinions to be admitted and weighed by the jury." Rogens also claim that Hoversten had no scientific basis for this opinion.

[¶ 11.] Prior to trial, testimony was taken from Monson's expert witness, Dr. Hoversten. In this deposition, he testified on direct examination as follows:

Q. (ATTORNEY FOR MONSON): Doctor, I believe you also did an impairment concerning both her back and her knee, and I want to ask first of all what degree of permanent impairment, if any, do you believe Mrs. Rogen has to her low back?

A. (DR. HOVERSTEN): I believe she has a 20 percent impairment of the whole person to her low back.

Q. (ATTORNEY FOR MONSON): Doctor, based upon your exam, and reasonable medical probability, can you prorate how much of that preexisted the car accident and how much you would say was caused by the car accident itself?

(ATTORNEY FOR ROGENS): First of all I will object for lack of foundation, and I would like to ask some questions pursuant to that objection for the purpose of making further objections.

(ATTORNEY FOR MONSON): No, just make your objection, you can do your cross.

(ATTORNEY FOR ROGENS): We object for lack of foundation, also lack of any scientific basis for making such a proration.

Q. (ATTORNEY FOR MONSON): What is your opinion, Doctor?

A: (DR. HOVERSTEN): *In my opinion I think that fully 95 percent of this impairment is due to the preexisting condition, and one could make the argument that a small part of it was made worse by the accident, perhaps 5 percent of this over all impairment from the accident itself.* (Emphasis added.)

\* \* \*

Q: (ATTORNEY FOR MONSON): Again do you have an opinion based upon reasonable medical probability as

to the proration as to what percent of [the knee impairment] preexisted the car accident and what percent of that was related to the car accident?

A: (DR. HOVERSTEN): *Again I think 95 percent of it is due to an underlying osteoarthritic problem, her obesity and her age, and that 5 percent of it could be related to a small injury sustained at the time of the accident which was quite insignificant and not complained about until several months following the accident.* (Emphasis added.)

[¶ 12.] During Hoversten's deposition, Rogens' objection consisted solely of the general objection of "foundation" with no further explanation and the "lack of any scientific basis for making such a proration." On November 19, 1998, after the deposition was completed, Rogens filed a list of their objections to Hoversten's deposition and asked the trial court to rule on them. In this listing, Rogens' objection stated as follows: "lack of foundation and lack of scientific basis for making proration." The judge overruled this objection without explanation.

[¶ 13.] Rogens argue that Hoversten's testimony should not have been admitted because Hoversten's testimony was not relevant and reliable. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the United States Supreme Court established specific standards for admission of expert scientific testimony. This Court followed *Daubert* in *State v. Hofer*, 512 N.W.2d 482, 484 (S.D.1994) when we held that a trial judge must ensure that an expert's testimony rests on both "a reliable foundation and is relevant to the task at hand." We further held in *Kuper v. Lincoln–Union Electric Co.*, 1996 SD 145, ¶ 41, 557 N.W.2d 748, 760, "when the trial court is ruling on the admissibility of an

expert opinion, the trial court needs to exercise its gatekeeping function."

[¶ 14.] In the present case, the trial court exercised its gatekeeping function in regards to the proposed testimony from Rogens' expert witness, George Merlo.[1] A *Daubert* hearing was held during the trial and the court was provided with sufficient information on this expert's proposed testimony and ultimately excluded parts of Merlo's proposed testimony. However, no such *Daubert* hearing was ever requested or held regarding Dr. Hoversten's testimony. We have previously stated, to insure a meaningful appellate review, the trial court must be allowed to rule "whether or not the subject of [the] expert's opinion rested on a reliable foundation." *See Kuper*, 1996 SD 145, ¶ 41, 557 N.W.2d at 760.

[¶ 15.] The objection of " 'lack of foundation' has no single defined meaning, [and] an objection of 'lack of foundation' generally is of little or no use to a trial judge." *Tolver v. State*, 269 Ga. 530, 500 S.E.2d 563, 565 (1998). Because of the various meanings that can be derived from the "lack of foundation" meaning, without a more specific explanation for the missing foundation element, both the trial judge and this Court are faced with mere speculation and guesswork as to what the objection counsel's issue is. *See id.* By not providing anything more than a "general objection," Rogens have failed to create a clear record for this appeal. Rogens provided only a "general" objection; therefore, the trial judge was never able to understand the precise question or specific grounds upon which to rule. Rogens never pursued any additional course of action beyond their "general" objection. Counsel was obviously aware that when expert testimony is offered that conjures up questionable scientific testimony, a *Daubert*

---

**1.** Rogens proposed that Merlo, a consulting engineer expert, would testify as to speed, force of impact and a study regarding "that [at] a certain speed, like five to ten mile an hour, ... there is no injuries." The court

allowed Merlo to "testify on speed [and] on all the things that his structural engineering degree give[s] him expertise in," but he was not allowed to go into his opinions on personal injuries sustained in the accident.

hearing should be sought. At least, that is what Rogens did when they made a motion in limine with regards to the testimony of the consulting engineer expert George Merlo. Here, Rogens request this Court to hold that the expert testimony of Dr. Hoversten should not have been admitted under *Daubert*. The trial court never had the opportunity to conduct its *Daubert* gatekeeping review of this expert as was the case with expert witness Merlo. The bare bones objection made on this medical testimony was totally insufficient. The record reflects that there was no meat put onto this generic bare bones objection so that a meaningful appellate review could be held. We generally do not reverse trial courts for reasons not argued before them.[2]

**[¶ 16.] 3. Whether the trial court erred in failing to grant an additur or new trial on damages.**

■ [¶ 17.] Our standard of review for a denial of a motion for new trial is well settled. We have often stated:

"Whether a new trial should be granted is left to the sound judicial discretion of the trial court, and this Court will not disturb the trial court's decision absent a clear showing of abuse of discretion. If the trial court finds an injustice has been done by the jury's verdict, the remedy lies in granting a new trial. We determine that an abuse of discretion occurred only if no judicial mind, in view of the law and the circumstances of the particular case, could reasonably have reached such a conclusion. Finally, we

note a decision to grant a new trial stands on firmer footing than a decision to deny a new trial."

*Gilkyson v. Wheelchair Express, Inc.,* 1998 SD 45, ¶ 6, 579 N.W.2d 1, 3 (quoting *Andreson,* 1997 SD 12, ¶ 5, 559 N.W.2d at 887 (quoting *Schuldies v. Millar,* 1996 SD 120, ¶ 8, 555 N.W.2d 90, 95 (quoting *Junge v. Jerzak,* 519 N.W.2d 29, 31 (S.D.1994) (other citations omitted)))). "An abuse of discretion is when no ' "judicial mind, in view of the law and the circumstances of the particular case, could reasonably have reached such a conclusion." ' " *Kuper,* 1996 SD 145, ¶ 36, 557 N.W.2d at 759 (quoting *Dartt v. Berghorst,* 484 N.W.2d 891, 894 (S.D.1992) (quoting *Jensen v. Weyrens,* 474 N.W.2d 261, 263 (S.D. 1991))).

■ [¶ 18.] A trial court has broad discretion in determining whether to grant a new trial based on insufficient evidence. *See Gilkyson,* 1998 SD 45, ¶ 16, 579 N.W.2d at 5 (quoting *LDL Cattle Co., Inc. v. Guetter,* 1996 SD 22, ¶ 13, 544 N.W.2d 523, 526 (citing *Lewis v. Storms,* 290 N.W.2d 494, 497 (S.D.1980))). "Nevertheless, a jury's verdict should not be set aside 'except in extreme cases where it is the result of passion or prejudice or the jury has palpably mistaken the rules of law....' " *Id.* (quoting *LDL,* 1996 SD 22, ¶ 13, 544 N.W.2d at 526–27 (citations omitted)). The trial court should only set aside a verdict " 'if the jury's conclusion was unreasonable and a clear illustration of its failure to impartially apply 'the reasoning

---

2. It is well settled that " '[t]he appellant must affirmatively establish a record on appeal that shows the existence of error. He [or she] must show that the trial court was given an opportunity to correct the grievance he [or she] complains about on appeal.' " *Husky Spray Serv., Inc. v. Patzer,* 471 N.W.2d 146, 153–54 (S.D.1991) (quoting *Cooper v. Cooper,* 299 N.W.2d 798, 800 (S.D.1980) (citations omitted)) (alterations in original). Further, " '[w]e will not review a matter on appeal unless proper objection was made before the trial court. Objections must be made to the trial court to allow it to correct its mistakes.' " *Id.* at 154 (quoting *Johnson v. John*

*Deere Co.,* 306 N.W.2d 231, 239 (S.D.1981) (citations omitted)). " '[F]ail[ure] to make a timely and appropriate objection at the time of the alleged error[,]' " does not preserve the issue for appeal. *Andreson v. Black Hills Power & Light Co.,* 1997 SD 12, ¶ 22, 559 N.W.2d 886, 890 (quoting *State v. Spiry,* 1996 SD 14, ¶ 15, 543 N.W.2d 260, 263). *See also State v. Nelson,* 1998 SD 124, ¶ 7, 587 N.W.2d 439, 443 (noting that "[t]o preserve issues for appellate review litigants must make known to trial courts the actions they seek to achieve or object to the actions of the court, giving their reasons").

faculty on the facts before them.'"" *Id.* (quoting *LDL,* 1996 SD 22, ¶ 13, 544 N.W.2d at 527 (citing *Lewis,* 290 N.W.2d at 497).) We have often stated that "[w]e examine the record to determine whether there is competent and substantial evidence to support the verdict." *Kuper,* 1996 SD 145, ¶ 35, 557 N.W.2d at 759 (citing *Zee v. Assam,* 336 N.W.2d 162, 165 (S.D.1983)). We examine the evidence in the record "in the light most favorable to the verdict, and give[ ] the prevailing party the benefit of all reasonable inferences." *Id.* (citing *Westover v. East River Elec. Power Coop.,* 488 N.W.2d 892, 896 (S.D. 1992)). Finally, " 'if there is competent and substantial evidence to support the verdict, it must be upheld.'" *Kremer v. American Family Mut. Ins. Co.,* 501 N.W.2d 765, 772 (S.D.1993) (Miller, J., concurring specially) (quoting *Gross v. Connecticut Mut. Life Ins. Co.,* 361 N.W.2d 259, 273 (S.D.1985) (citations omitted)).

[¶ 19.] In the present case, the jury awarded Beverly $4,800 and Alton $0 via a general verdict. By using a "general verdict" form, it remains mere speculation as to how the jury categorized the damages awards. Rogens contend that because the jury's verdict was so low and the "only evidence contained in the record which could be construed as justifying such a low award is the opinion of Dr. Hoversten that 95% of Mrs. Rogen's injuries were from her preexisting arthritic condition rather than the accident," the trial court erred when it refused to grant the motion for new trial. The trial court noted in the motion for new trial hearing:

As far as the prejudice or bias of the jury, I mean the Plaintiffs were just about the sweetest down-home country folk people I've ever seen and, if anything, I'm sure it bothered the jury immensely not to give them what they were asking for. I saw no sign of any prejudice or bias during the trial and simply because the verdict was so low, I don't know why that occurred, it did occur, there was a lot of testimony on

each side regarding the amount of impact as to – and that may have been a significant factor here because impact was so mild as to cause any serious – the injuries she was complaining of and Dr. Hoversten, or of what the family doctor offered at trial. I think it's just – it's not easy getting the Plaintiffs' verdict here, it doesn't seem like, in Pennington County or any substantial one anyway and I'm not going to grant the Additur or the Motion for New Trial.

[¶ 20.] We have previously held " '[a] new trial is not to be granted due to inadequacy of damages merely because a court believes a verdict is smaller than it should be.'" *Andreson,* 1997 SD 12, ¶ 8, 559 N.W.2d at 888 (quoting *Itzen v. Wilsey,* 440 N.W.2d 312, 313 (S.D.1989)). " 'Furthermore, plaintiffs suing for personal injury are not guaranteed the recovery of any predetermined amount of damages.'" *Id.* (citing *Itzen,* 440 N.W.2d at 314 (quoting *Gould v. Mans,* 82 S.D. 574, 577, 152 N.W.2d 92, 93 (1967))). Additionally, " '[t]his Court is not free to reweigh the evidence or gauge the credibility of the witnesses.... If the jury's verdict can be explained with reference to the evidence, rather than by juror passion, prejudice or mistake of law, the verdict should be affirmed.'" *Id.* (quoting *Miller v. Hernandez,* 520 N.W.2d 266, 272 (S.D.1994) (citations omitted)).

[¶ 21.] The jury was presented evidence that Beverly's past medical expenses amounted to $13,000 and that she would need a right knee replacement and a back fusion as part of her future medical expenses of $35,000. Both parties submitted expert testimony regarding the extent of damages sustained in the accident and whether any injuries were preexisting. "Trials are a search for the truth as determined by the jury based upon all the evidence." *Tunender v. Minnaert,* 1997 SD 62, ¶ 27, 563 N.W.2d 849, 855. In its search for the truth, "it is the jury's role to weigh the testimony, resolve conflicting testimony, and evaluate the credibility of

the witnesses." *City of Bridgewater v. Morris, Inc.*, 1999 SD 64, ¶14, 594 N.W.2d 712, 716 (citing *Berry v. Risdall*, 1998 SD 18, ¶10, 576 N.W.2d 1, 4). Rogens' claim that the jury relied upon Dr. Hoversten's testimony because the "jury awarded only the equivalent of approximately five percent of the total medical expenses and an additional five percent apparently for general damages (a total verdict of $4,800)" is without merit. It must be reiterated that the jury returned only a general verdict form with no explanation for the amount of damages they awarded. Rogens' parsing of the award into two five percent awards is based on speculation.

[¶22.] Rogens have failed to show that "competent and substantial evidence" did not exist to support the verdict. The jury was present at the trial, they heard the contradicting testimony in regards to injuries caused by the accident and those which were preexisting. Rogens have failed to show that the jury verdict was nothing more than the jury weighing the testimony, finding Rogens' damages not proximately caused by the accident, and resolving the conflicts in favor of Monson. "[C]ompetent and substantial evidence'" existed in this case to support the jury verdict; therefore, "'it must be upheld.'" *Kremer*, 501 N.W.2d at 772 (Miller, J., concurring specially) (quoting *Gross*, 361 N.W.2d at 273). The trial court did not abuse its discretion in denying Rogens' motions.

[¶23.] We affirm.

[¶24.] MILLER, Chief Justice, and SABERS and GILBERTSON, Justices, concur.

[¶25.] KONENKAMP, Justice, concurs with writing.

KONENKAMP (concurring).

[¶26.] *Daubert's* methodology was intended to create a uniform procedure for addressing expert testimony based on scientific, technical, or other specialized knowledge. Hon. Janine M. Kern and Scott R. Swier, Daubert v. Merrell Dow Pharmaceuticals, Inc.: *"Gatekeeping"* or *Industry "Safekeeping"?* 43 S.D.L.Rev. 566, 576 (1998). *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Had a proper record been made in this case, *Daubert's* bifold relevance and reliability process for determining admissibility should have been employed. *See* SDCL 19–9–7 (Rule 104(a)). A trial court's gatekeeping function under *Daubert* is not limited to cases involving novel scientific or technical evidence. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147, 119 S.Ct. 1167, 1174, 143 L.Ed.2d 238 (1999). Unquestionably, *Daubert* should apply to medical opinions to ensure that a medical expert, "whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Black v. Food Lion, Inc.*, 171 F.3d 308, 311 (5thCir.1999) (quoting *Kumho Tire*, 526 U.S. at 152, 119 S.Ct. at 1176, 143 L.Ed.2d 238).

[¶27.] Not every proffer of expert opinion, however, requires the full *Daubert* foundation. First, "[i]f theory and instrument are generally accepted, the judge will judicially notice those elements of the foundation upon a proper timely request by counsel." Edward J. Imwinkelried, Evidentiary Foundations 116 (4th ed. 1998). Second, in fulfilling its "gatekeeping" role, the trial court *may* consider one or more of the five specific *Daubert* factors to decide whether the testimony is reliable. *Kumho*, 526 U.S. at 151–53, 119 S.Ct. at 1176, 143 L.Ed.2d 238. *See also* SDCL 19–15–2 (Rule 702) (note the use of the word "may"). A doctor's experiential opinions should be subjected to some of *Daubert's* factors to help evaluate reliability. *Kumho Tire*, 526 U.S. at 149, 119 S.Ct. at 1175, 143 L.Ed.2d 238.

[¶28.] The test for reliability is flexible — *"Daubert's* list of specific factors neither necessarily nor exclusively applies

to all experts in every case." *Kumho,* 526 U.S. at 141, 119 S.Ct. at 1171, 143 L.Ed.2d 238. Courts possess broad latitude in deciding how to determine reliability. When we examine a trial court's reliability determination as well as its ultimate decision to admit or exclude expert testimony, abuse of discretion remains our standard of review. *General Elec. Co. v. Joiner,* 522 U.S. 136, 144–45, 118 S.Ct. 512, 518, 139 L.Ed.2d 508 (1997).