#24246-a-JKM

**2007 SD 76**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,            Plaintiff and Appellee,

    v.

RONALD JENSEN,            Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
SHANNON COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE THOMAS L. TRIMBLE
Judge

\* \* \* \*

LAWRENCE E. LONG
Attorney General

CRAIG EICHSTADT
Deputy Attorney General            Attorneys for plaintiff
Pierre, South Dakota            and appellee.

KENNETH R. DEWELL of
Johnson Eiesland Law Firm            Attorneys for defendant
Rapid City, South Dakota            and appellant.

\* \* \* \*

CONSIDERED ON BRIEFS
ON MAY 21, 2007

OPINION FILED **07/25/07**

MEIERHENRY, Justice

[¶1.] Ronald Jensen appeals his conviction for three counts of misuse or alteration of a brand, contending there was insufficient evidence to sustain the jury's guilty verdict. He also claims that the State violated a pre-trial discovery order by presenting undisclosed evidence and witness testimony during rebuttal and submits that the trial court erred when it refused to incorporate his proposed jury instructions. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

[¶2.] On July 8, 2004, Virgil Rust noticed that one of his cows had recently been branded with a brand that he did not recognize. He reported the suspicious brand to Sheriff Jim Daggett for investigation. Daggett's investigation revealed that the fresh brand belonged to Walter Schultz, Jr., who was a partner in the cattle business with Jensen. Upon further investigation, law enforcement identified three more cows with Rust's brand in Jensen's pasture located four miles away from Rust's ranch. The differences in the brands were easily seen from a distance. One difference was that Rust's cattle had single brands as opposed to the multiple brands on Jensen's cattle. Another difference was the placement of the brand in that Rust's cattle were branded on the right hip, and Jensen's cattle were branded on the left rib.

[¶3.] Law enforcement eventually discovered a total of five cows with Rust's brand. Each of the Rust-branded cows was paired with a calf branded with Jensen's brand. DNA evidence confirmed that four of the five cow/calf pairs discovered were genetically cow/calf pairs. The DNA result for the other pair was "undetermined."

Neither Schultz nor Jensen could explain the cow/calf mismatched branding. Jensen admitted that he knew Rust's brands but appeared mystified that he or others had not seen Rust's brand when they recently moved the cattle to a new pasture. His only explanation was that cattle frequently stray but are returned when discovered.

[¶4.] The State charged Jensen and co-defendant Schultz with six counts of misuse or alteration of a brand. During trial, chief brand inspector Shorty Zilverberg, who examines 75-125 cases per year, testified that he had never seen a case like Jensen's where as many as five cows had different brands than their calves had. Another brand inspector, Ned Westphal, also testified that in his thirty-plus years of brand inspecting, he had never seen five cow/calf pairs bearing different brands. He testified that while accidents do occasionally occur, having five misbranded calves in a herd of 150 was unusual. The State also presented evidence that Jensen and Schultz both participated in the 2004 brandings on Jensen's ranch when the misbrandings occurred. Rust testified during the State's case-in-chief that he was not present at any of the brandings, and that he was unaware of any specific branding dates.

[¶5.] Jensen's defense was that the misbrandings were simply a mistake or that Rust had set him up by branding his own cattle with Jensen's brand. In support of his defense, Jensen presented several witnesses who testified that Rust was present at the March 20, 2004 branding to ensure that Jensen and Schultz did not have any of his cattle. To refute Jensen's claim that Rust was present at the March 20, 2004 branding, the State recalled Rust and presented two corroborative

witnesses who both testified that Rust was in Scottsbluff, Nebraska, 185 miles away

from South Dakota on that date. The State substantiated the testimony with Rust's

canceled check and receipt for a haircut in Scottsbluff on March 20, 2004, at 11:43

a.m.

[¶6.] The jury convicted Jensen of three counts of misuse or alteration of a

brand. Jensen appeals, raising three issues:

1. Whether the trial court erred in denying Jensen's motion for judgment of acquittal based upon insufficiency of the evidence.

2. Whether the State violated a discovery order when it presented undisclosed witness testimony and evidence during rebuttal.

3. Whether the trial court abused its discretion when it denied Jensen's proposed jury instructions.

## STANDARD OF REVIEW

[¶7.] "The denial of a motion for judgment of acquittal presents a

question of law, and thus our review is de novo." State v. Berhanu, 2006 SD

94, ¶7, 724 NW2d 181, 183 (citation omitted). Accordingly, "[w]e must decide

anew whether the evidence was sufficient to sustain a conviction." *Id*. This

Court's standard of review in a challenge to the sufficiency of the evidence is

well settled:

> In determining the sufficiency of the evidence on appeal in a criminal case, the issue before this Court is whether there is evidence in the record which, if believed by the jury, is sufficient to sustain a finding of guilt beyond a reasonable doubt. In making that determination, we accept the evidence and the most favorable inferences fairly drawn therefrom, which will support the verdict. Moreover, the jury is . . . the exclusive judge of the credibility of the witnesses and the weight of the evidence. Therefore, this Court does not resolve conflicts in the evidence, or pass on the credibility of witnesses, or weigh the evidence.

State v. Lewis, 2005 SD 111, ¶8, 706 NW2d 252, 255 (quoting State v. Pasek, 2004 SD 132, ¶7, 691 NW2d 301, 305). "[O]ur standard of review for the violation of a discovery order mirrors the standard applied when reviewing both mistrial motions and evidentiary issues," and "[w]e presume the evidentiary rulings made by a trial court are correct, and review those rulings under an abuse of discretion standard." State v. Krebs, 2006 SD 43, ¶19, 714 NW2d 91, 99. Finally, "[t]his Court reviews the refusal of proposed jury instructions under the abuse of discretion standard." State v. Nuzum, 2006 SD 89, ¶9, 723 NW2d 555, 557 (citation omitted).

## ANALYSIS AND DECISION

*Sufficiency of the Evidence*

[¶8.]        Jensen argues that there was insufficient evidence to convict him of misuse or alteration of a brand pursuant to SDCL 40-19-25. Specifically, he argues that there was insufficient evidence presented to the jury regarding the necessary "intent to defraud" element required by SDCL 40-19-25, which provides in its entirety:

> Any person who, *with intent to defraud*, brands or marks any cattle, horse, sheep, buffalo, or mule, not his own; *intentionally* brands over a previous brand or in any manner alters, defaces, or obliterates a previous brand; or cuts out or obliterates a previous brand on any cattle, horse, sheep, buffalo, or mule is guilty of a Class 5 felony.

(Emphasis added).

[¶9.]        "All elements of a crime, including intent . . ., may be established circumstantially." State v. Guthrie, 2001 SD 61, ¶48, 627 NW2d 401, 421 (citing State v. Holzer, 2000 SD 75, ¶15, 611 NW2d 647, 651). Furthermore, "[n]o guilty verdict will be set aside if the evidence, including circumstantial evidence and

reasonable inferences drawn therefrom, sustains a reasonable theory of guilt." State v. Barry, 2004 SD 67, ¶6, 681 NW2d 89, 91-92 (citing State v. Knecht, 1997 SD 53, ¶22, 563 NW2d 413, 421).

[¶10.]     A review of the record reveals that there was sufficient evidence of intent to support the jury's verdict.  Initially, Jensen admitted he did not own either the double-branded cow or the five calves bearing his brand.  In addition, brand-inspector Westphal testified that the person applying the fresh brand would have seen the old brand because it was placed so close to the old brand that it distorted the old brand to the extent that a brand inspector would not be able to discern the original brand.  In Westphal's opinion, the old Rust brand had been altered.  Sheriff Daggett also testified that branding over a previous brand is more than just carelessness.

[¶11.]     Furthermore, the State presented testimony that five misbrandings in a herd the size of Jensen's is very unusual.  Likewise, the obvious difference between Rust's brand and Jensen's brand made it likely that Jensen knew Rust's cattle were intermingled in his herd.  On that point, Westphal testified that Jensen should have recognized that the cows were not his.  Additionally, Daggett testified that it was unlikely the cows would wander four miles away from Rust's property. Finally, the evidence also established that Jensen was present for all of the brandings on his ranch and was in charge of the branding of cows and calves he owned.

[¶12.]     Although Jensen submitted that these misbrandings were simply mistakes, it is well established that "the jury is . . . the exclusive judge of the

credibility of the witnesses and the weight of the evidence." *Lewis*, 2005 SD 111, ¶8, 706 NW2d at 255 (citation omitted). The jury was evidently not swayed by Jensen's testimony and evidence. Thus, based on our standard of review, there was sufficient evidence from which a jury could reasonably infer that Jensen branded the calves and/or the double-branded cow with the intent to defraud Rust.

*Violation of Discovery Order*

[¶13.]     Jensen claims his case was prejudiced because the State did not disclose the witnesses and evidence regarding Rust's whereabouts on March 20, 2004, in violation of a discovery order. His claim is without merit. First, he fails to show that the State withheld evidence covered by a discovery order. The only signed discovery order in the record ordered the State to produce and allow inspection of the cattle and calves. It was not a general discovery order and did not encompass the testimony and evidence regarding Rust's whereabouts on March 20, 2004. Jensen claims, however, that he was covered by an oral pronouncement made by the judge in response to co-defendant Schultz's discovery motion. The record lends no support to his claim. Schultz filed a discovery motion, but there is no indication that Jensen joined in Schultz's motion. During the motion hearing, Jensen's attorney represented to the judge that he had filed no discovery motion and did not orally indicate that he was joining in Schultz's discovery motion.

[¶14.]     Second, even had Jensen been included in the discovery order requested by Schultz, Jensen failed to object to the evidence on those grounds. When the State presented the rebuttal testimony and evidence, Jensen objected on the grounds that there was "no verification of the time on the check as being

accurate by the machine on the back." Normally, objections to the admission of testimony upon different grounds than those specifically urged in the trial court will not be considered on appeal. *See* Rogen v. Monson, 2000 SD 51, ¶15, n2, 609 NW2d 456, 459-60, *see also* Whiffen v. Hollister, 12 SD 68, 80 NW 156, 158 (SD 1899). "We generally do not reverse trial courts for reasons not argued before them." *Rogen*, 2000 SD 51, ¶15, 609 NW2d at 460.

[¶15.]     Jensen attempts to rely on *Krebs* in support of his argument, but there are several distinguishing characteristics of *Krebs* that are not present in this case. *See* 2006 SD 43, 714 NW2d 91. In *Krebs*, the State conceded that it violated a signed discovery order when it failed to provide inculpatory evidence. *Id.* ¶18, 714 NW2d at 98. Instead of arguing that there was no discovery violation, the State claimed that Krebs suffered no prejudice from the violation, a necessary element for reversal. *Id.* We determined that the withheld testimonial evidence that Kreb's injuries were self-inflicted was inculpatory and completely undercut Kreb's self-defense claim; thus, the discovery violation was prejudicial. *Id.* ¶¶20-21, 714 NW2d at 99.

[¶16.]     In contrast, there is no signed discovery order or motion for discovery in the Jensen file. Furthermore, the testimony and exhibit that was withheld is not, standing alone, inculpatory evidence. It is also not evidence that completely undercuts the defense. Whether Rust was in Scottsbluff on March 20, 2004, and had a haircut at 11:43 a.m. does not completely undercut Jensen's mistake defense. The State presented the evidence as rebuttal to impeach the credibility of the defense witnesses who testified that Rust was at the March 20, 2004, branding.

"[T]he risk of prejudice from a discovery violation is reduced when the only value of the evidence is for impeachment." State v. Belken, 633 NW2d 786, 796 (Iowa 2001) (citation omitted).

[¶17.] Furthermore, under South Dakota's criminal procedure discovery statutes (chapter 23A-13 (Rule 16)), the defendant must request discovery, and the prosecuting attorney need only disclose what evidence the State intends to use in its case-in-chief. For example, SDCL 23A-13-3 provides:

> *Upon written request of the defendant*, the prosecuting attorney shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings, or places, or copies or portions thereof, which are within the possession, custody, or control of the prosecuting attorney and which are material to the preparation of his defense or *intended for use by the prosecuting attorney as evidence in chief at the trial*, or were obtained from or belong to the defendant.

(Emphasis added). Here, Jensen made no written request, and the State did not use the undisclosed evidence in its case-in-chief. Accordingly, there was no violation of a discovery statute or discovery order in this case.[1]

---

1.  Although not briefed or argued by Jensen, "[d]ue process under the Fourteenth Amendment . . . requires the State to reveal exculpatory evidence to the defense." Rodriguez v. Weber, 2000 SD 128, ¶14, 617 NW2d 132, 138 (citing Brady v. Maryland, 373 US 83, 87, 83 SCt 1194, 1196-97, 10 LEd2d 215, 218 (1963)). However, the evidence must be requested by the defendant and material to guilt or innocence. Ashker v. Solem, 457 NW2d 473, 477 (SD 1990) (citing U.S. v. Peltier, 800 F2d 772 (8thCir 1986); State v. Wilde, 306 NW2d 645 (SD 1981)). Once again, Jensen did not request this evidence, and evidence that Rust was in Scottsbluff on March 20, 2004, and received a haircut at 11:43 a.m. was not material to whether Jensen was guilty or innocent of the crime charged, misuse or alteration of a brand. It merely rebutted the testimony offered by the defense that Rust was present at the Jensen branding.

*Jury Instructions*

[¶18.]     Jensen proposed three instructions. His first and second proposed instructions related to Jensen's mere presence at the scene of the crime as insufficient to make him an aider and abetter. His third proposed instruction related to ignorance or mistake of fact, which was his theory of defense. The trial court, relying partially on *State v. Johnston*, 478 NW2d 281 (SD 1991), rejected all of his proposed instructions because the substance of the proposed instructions was already contained in other instructions.

[¶19.]     In *Johnston*, we said*:* "[j]ury instructions are to be considered as a whole, and if the instructions when so read correctly state the law and inform the jury, they are sufficient." 478 NW2d at 283 (citing State v. Huber, 356 NW2d 468 (SD 1984)). Clearly, it is not error for a trial court to refuse instructions offered only to amplify principles already embodied in the court's instructions. *Id.* (citing State v. Weisenstein, 367 NW2d 201, 206 (SD 1985)) (additional citation omitted).

[¶20.]     In *Johnston*, this Court adopted the holding of the New Mexico Court of Appeals that "'whenever an intent instruction involving the defendant's mental state is given, the mistake of fact concept is automatically included and does not merit a separate instruction.'" *Id.* (quoting State v. Griscom, 683 P2d 59 (NMCtApp 1984)). Notably, *Johnston* involved the same facts and instructions as are currently before this Court. The trial court in *Johnston* instructed the jury on the elements of the crime of brand alteration, including the requisite intent for the crime; therefore, we held that a separate instruction pertaining to Johnston's theory of defense

(mistake of fact) was not warranted. *Id.* We held that the trial court's instructions adequately covered any mistake of fact claim. *Id.*

[¶21.]    In this case, the trial court instructed the jury on the elements of the crime, including the requirement that the defendant act with intent to defraud. The court also gave two other instructions defining "intent" and "intent to defraud." There were also two instructions pertaining to aiding and abetting. One of those instructions specifically stated that "[t]he mere presence alone of the defendant at the scene of a crime is not sufficient to make that person an aider and abetter."

[¶22.]    Jensen's proposed jury instructions, denied by the trial court, were merely cumulative in nature to the instructions properly given to the jury. Again, we do not require trial courts to provide repetitive instructions in order to amplify the defense. *Johnston*, 478 NW2d at 283. Therefore, because the principles embodied in Jensen's requested instructions were substantially covered by the instructions given, the trial court did not err in denying them.

[¶23.]    Affirmed.

[¶24.]    GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and ZINTER, Justices, concur.