In re **DONAHUE SECURITIES, INC.** and S.G. Donahue & Company, Inc., Debtors.

Douglas L. Lutz, Trustee for the Liquidation of Donahue Securities, Inc. & S.G. Donahue Company, Inc., Plaintiff,

v.

Richard Chitwood and Michelle Schumacher and Sharyn Lynn Mayer, Defendants.

Bankruptcy No. 01–1027.
Adversary No. 02–1381.

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

Oct. 7, 2004.

See also 304 B.R. 797.

Frederick J McGavran, Gerald L. Baldwin, Cincinnati, OH, for Douglas L. Lutz, Plaintiff.

Ryan C. Edwards, Cincinnati, OH, for Michelle Schumacher, Richard Chitwood, Sharyn Lynn Mayer, Defendants.

## MEMORANDUM DECISION GRANTING DEFENDANTS' MOTION TO DISMISS CLAIMS FOR NEGLIGENCE, BREACH OF FIDUCIARY DUTY AND NEGLIGENT SUPERVISION ASSERTED BY SIPC

JEFFERY P. HOPKINS, Bankruptcy Judge.

This adversary proceeding arises under the Securities Investor Protection Act of 1970 ("SIPA") following the consolidated liquidation of Donahue Securities, Inc. ("DSI") and S.G. Donahue & Company, Inc. ("SGD"). *See* 15 U.S.C. § 78aaa, *et seq.* Plaintiff, the SIPA trustee, Douglas L. Lutz, on behalf of the Securities Investor Protection Corporation ("SIPC"), as subrogee of customer claims it has paid, and in his own capacity as bailee of customer property, filed this suit against three former employees of DSI, Richard Chitwood, Michelle Schumacher and Sharyn Mayer. (These individuals are hereinafter referred to as "Chitwood", "Schumacher" and "Mayer" or collectively as "Defendants"). The Amended Complaint (Doc. 29) seeks a judgment for an award of an unspecified amount of monetary damages from the Defendants based on claims of negligence and breach of fiduciary duty. Plaintiff also seeks a judgment awarding damages from Chitwood, individually, as DSI's registered "compliance principal," on a claim for negligently supervising the other Defendants and Stephen G. Donahue ("Donahue").

Presently before the Court is a motion to dismiss ("Motion") (Doc. 31) all of the claims asserted in the Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6). The Court has jurisdiction to resolve this dispute pursuant to 15 U.S.C. § 78eee(b)(2)(A)(iii). *See Securities Investor Protection Corp. v. Cheshier & Fuller, L.L.P. (In re Sunpoint Securities, Inc.),* 262 B.R. 384 (Bankr.E.D.Tex.2001).

### I. Legal Standard under Rule 12(b)(6)

When a defendant seeks dismissal under Rule 12(b)(6), the standard requires that the Court determine the motion as if each of the allegations of the Amended Complaint are true. *Blakely v. U.S.,* 276 F.3d 853, 863 (6th Cir.2002); *Herrada v. City of Detroit,* 275 F.3d 553, 556 (6th Cir.2001). "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the Amended Complaint is true." *Mayer v. Mylod,* 988 F.2d 635, 638 (6th Cir.1993). A motion to dismiss for failure to state a claim may be granted only if the court has no doubt that

relief cannot be granted under any set of facts that could be proved consistent with the allegations set forth in the Amended Complaint. *Hartford Fire Ins. Co. v. California,* 509 U.S. 764, 811, 113 S.Ct. 2891, 125 L.Ed.2d 612 (1993); *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Essentially, the Amended Complaint need only contain either direct or inferential allegations with respect to all material elements of a viable legal theory. *Varljen v. Cleveland Gear Co., Inc.,* 250 F.3d 426, 429 (6th Cir.2001); *Glassner v. R.J. Reynolds Tobacco Co.,* 223 F.3d 343, 346 (6th Cir.2000).

## II. Factual Allegations in the Amended Complaint

Viewing the facts in a manner consistent with the allegations in the Amended Complaint, the Court makes the following observations. Donahue was the sole shareholder and president of both DSI and SGD. DSI had been registered as a broker-dealer with the Securities and Exchange Commission ("SEC") and dealt with the purchase, sale and redemption of various investment securities. SGD was a separate company that shared employees and offices with DSI, but was not registered as a broker dealer. Defendants were all employees of DSI and were licensed by the National Association of Securities Dealers ("NASD") as "registered representatives."[1] In addition to his title of registered representative, Chitwood was DSI's registered compliance principal, as defined by DSI's compliance manual. As the title suggests, Chitwood was charged with seeing that all DSI's employees complied with the compliance manual and the applicable SEC and NASD rules and regulations. Donahue, through the guise of these investment companies, proceeded to defraud clients and divert funds for payment of his personal expenses, including payment of his taxes and the purchase and renovation of a Florida condominium among numerous other expenditures.[2]

The Amended Complaint outlines two schemes that Donahue utilized to convert client funds. The first involved client funds identified as § 403(b) retirement funds (" § 403(b) funds").[3] Donahue would instruct non-profit, corporate clients to make their § 403(b) funds payable to SGD rather than DSI. This allowed Donahue to deposit funds in the SGD account and to circumvent certain SEC rules that require broker-dealers to invest § 403(b) funds within twenty-four hours of their receipt by the brokerage firm. The deposit of § 403(b) funds in the SGD account also allowed Donahue to build up excess funds in the SGD account which he later converted.

The second illegal scheme Donahue employed involved a fictitious mutual fund

---

1. NASD regulation 1031(b) defines a "registered representative" as follows:

    Persons associated with a member, including assistant officers other than principals, who are engaged in the investment banking or securities business for the member including the functions of supervision, solicitation or conduct of business in securities or who are engaged in the training of persons associated with a member for any of these functions are designated as representatives.

2. Donahue plead guilty to wire fraud charges in the United States District Court for the Southern District of Ohio on June 3, 2003 and was sentenced to a term of 46 months in federal prison. None of the Defendants in this case, however, have ever been charged criminally with any offenses arising from the allegations contained in the Amended Complaint.

3. These funds refer to retirement plans for employees of non-profit corporations as outlined in 26 U.S.C. § 403(b).

account. Under that scheme, Donahue would inform clients that he had invested their money into a fund that would yield 5% to 6% interest. After convincing clients to invest, Donahue would then deliver copies of their checks to Schumacher or Mayer and the two would credit the fictitious account. Donahue would later deposit the proceeds from the checks that he had taken from those clients into his own account and convert the proceeds for personal use.

The Amended Complaint does not allege that the Defendants knowingly participated in or purposely aided Donahue in the furtherance of his illegal activities. Nevertheless, the Amended Complaint charges that the Defendants were negligent in performing their duties as employees of DSI, that they breached a fiduciary duty to DSI's customers when they failed to discover or prevent Donahue's fraud, and that these individuals as employees and registered representatives can, if these facts are proven, be held legally responsible under established common law principles. The Trustee seeks monetary damages from the Defendants to cover the loss suffered by DSI customers and SIPC's administrative costs for liquidating the firm as the result of its insolvency.

### III. Preliminary Discussion

This case represents a departure from the usual adversary proceeding in bankruptcy court. First, SIPC cases are a relatively rare occurrence. Secondly, the factual predicate upon which this case is based, though undoubtedly the subject of much litigation, is a rarity even in state courts or federal district courts exercising pendent jurisdiction over such claims. At its core, the case involves a suit brought by SIPC to recover for injuries suffered from a fraud committed upon customers of a broker-dealer resulting in the depletion of customer funds. What is different about this case is that the suit was not brought against the broker, the actual tortfeasor in the case, or the broker-dealer under a familiar respondeat superior theory, but rather against employees of the insolvent broker-dealer simply because these individuals hold positions which that industry defines as "registered representatives" and, in the case of one, because he is also the "compliance principal" for the broker-dealer, the duties for which are defined in DSI's compliance manual.

Most disputes of this nature, pertaining to the duties owed by broker-dealers to their customers, until relatively recently, have all been tried in a state or federal court under applicable common law standards. However, in a trilogy of cases decided in the 1980s, the Supreme Court upheld the enforceability of arbitration clauses in agreements between customers and their broker-dealers. *See Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989); *Shearson/American Express v. McMahon,* 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987); *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). Those cases ushered in a new era of arbitration of these kinds of disputes leading one noteworthy authority on the subject to comment:

> Since most disputes between brokers and their customers are now subject to arbitration, much of the law relating to broker-dealer obligations is likely to be frozen in a state of suspended animation preserved in much the state that it was in the pre-arbitration era. Arbitration awards generally do not contain long discussions of the law. Furthermore, the standard of judicial review gives so much leeway to the arbitrators' decision that additional judicial decisions will be few and far between.

3 THOMAS LEE HAZEN, LAW OF SECURITIES REGULATION § 14.15 (4th ed.1998).

What few court decisions there are on the subject typically contain scant analysis of the arbitrator's decision and, as noted in one decision cited by the Plaintiff, not all arbitrators in these cases have been attorneys. With this backdrop, the Court writes on a slate where well-established legal principles—frozen in a state of suspended animation—collide with a reality of the modern relationships that form between broker-dealers and their customers, permeated by SEC and NASD rules and regulations. Because of the unique facts and circumstances presented by the Amended Complaint, the result reached in this memorandum decision will, in all probability, have limited application beyond this case.

### IV. Discussion

A. Overview of Allegations Asserted in the Amended Complaint

The Amended Complaint presents the following claims:

1. Defendants Negligently Failed to Safeguard Customer Funds

2. Defendants Negligently Failed to Expose a Fictitious Mutual Fund

3. Defendants Negligently Failed to Expose Fictitious Credits in Customers' "Bond Fund" Accounts

4. Defendants Negligently Failed to Discover and Prevent Donahue from Depositing Customers' Funds in his Personal Account

5. Defendants Negligently Failed to Discover and Prevent Donahue from Converting Customers' Funds

Although these claims appear to sound in common law negligence alone, the Plaintiff states in his response to the Motion that the Amended Complaint is premised upon the following three legal theories: (1) negligence; (2) breach of fiduciary duty; and (3) negligent supervision as to Chitwood only. These three theories are addressed in order.

### B. Negligence

Under a negligence theory, the Amended Complaint ostensibly charges that the Defendants negligently failed to safeguard DSI customers' funds. The Trustee argues strenuously that the Defendants owed a duty to DSI customers as employees and registered representatives defined by NASD regulations and DSI's compliance manual, that the duty was breached when the three did not discover, prevent or report Donahue's fraud and that the Defendants are legally responsible for the loss which resulted in the depletion of customer funds entrusted to DSI.

To establish a claim for common law negligence, however, the Plaintiff must demonstrate that a duty existed, the duty was breached and that the damage was proximately caused by the breach. *Menifee v. Ohio Welding Products, Inc.*, 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984); *Feldman v. Howard*, 10 Ohio St.2d 189, 226 N.E.2d 564 (1967). Thus, as a threshold matter, the Trustee must establish that the Defendants were bound by some form of common law duty to the customers of DSI and SGD.

It is a well-established rule under Ohio law that a stockbroker who receives securities from a customer for sale or exchange stands in a relationship to the customer as an agent or bailee. *Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 482 (6th Cir.1973); *Thropp v. Bache Halsey Stuart Shields, Inc.*, 650 F.2d 817 (6th Cir.1981). Thus, in Ohio, a principal, or customer, has a right of action against his agent for negligence and a bailor against his bailee for negligence or breach of contract.

Equally well-worn is the concept that broker-dealers are subject to common law duties, and in some instances under Ohio law, fiduciary obligations to their customers. *See Javitch v. First Montauk Financial Corp.*, 279 F.Supp.2d 931, 937 (N.D.Ohio 2003) (Ohio courts appear to follow the majority view which holds that blanket fiduciary relationship between the client and broker does not arise as a matter of law, but additional facts must be proven to create a fiduciary duty.) If a fiduciary relationship between the broker and client is found to exist, the law treats the relationship as one that is special, and a broker owes the client a duty to use reasonable care and to act at all times in good faith towards the clients's interests. *Thropp, supra* at 819.

■ The gravamen of the Amended Complaint alleges that Donahue's malfeasance as a broker towards his "personal customers" resulted in a loss to those clients. It is conceded, however, that the Defendants were not involved in the fraud in the sense that they knowingly participated in or profited directly from Donahue's illegalities. That Donahue, a stockbroker, qualified as fiduciary of the DSI customers he defrauded, for purposes of deciding this Motion, is clear. It is equally clear that Donahue mishandled his customer's accounts and in so doing, was negligent and breached a fiduciary duty to them in addition to violating a number of criminal statutes. The pivotal question in this case, however, is one of law which considers whether the Defendants, because of their association with DSI and the ancillary role they are alleged to have played in Donahue's illegal schemes, can be held to the same standard of care traditionally reserved, under the common law, for a broker.

In the briefs and again in the oral argument on the Motion, the Trustee stressed his reliance upon *Securities Investor Protection Corp. v. R.D. Kushnir & Co.*, 267 B.R. 819 (Bankr.N.D.Ill.2001) and *Thropp v. Bache Halsey Stuart Shields, Inc.*, 650 F.2d 817 (6th Cir.1981) for the proposition that the Defendants owed certain duties to DSI and its customers by virtue of their status as employees and registered representatives of DSI and by virtue of the fact that they had worked on the customers' accounts effected by the fraud. In essence, the Trustee contends that the Defendants are subject to the same common law duties normally assigned to a broker and that the three can be held liable to the Plaintiff if, as alleged in the Amended Complaint, they failed to adhere to a standard of prudence established by SEC and NASD rules or DSI's compliance manual.

The Plaintiff's reliance on *Thropp* and *Kushnir*, however, is misplaced. Both *Thropp* and *Kushnir* are distinguishable, legally and factually, from the case at bar. *Kushnir* merely stands for the proposition that a broker who is himself guilty of misconduct and of breaching his duties to clients prescribed under NASD rules is liable to the firm for the resulting losses to which he exposed it and to SIPC for the administrative costs of liquidation. Similarly, the Sixth Circuit, in *Thropp*, upheld a decision by the district court finding a *broker-dealer*, not any of its employees, liable to a customer based on the negligence of one of its brokers. In that case, the court stated "[w]e hold that [the firm] owed [the client] a duty to protect the assets she had entrusted to its care from unauthorized transactions that could deplete her account." The court went on to conclude that "[the firm's] negligence was the legal cause of the injury and [the firm] is liable to [the client] in damages." *Id.* at 822.

■ The law, when applied, simply does not provide a remedy for every injury that

is sustained in the absence of a violation of some duty imposed by law. *See Perla v. Cleveland Clinic Foundation*, No. 83058, 2004 WL 906115 (Ohio Ct.App. Apr. 29, 2004). Nothing in Ohio law establishes a legal duty upon the Defendants to safeguard client funds from the unauthorized transactions of another broker simply based on their status as "registered representatives" or for performing tasks assigned to them by the broker for whom they were employed. Here, the Amended Complaint does not charge the Defendants with occupying a position which Donahue apparently reserved only for himself—that of being the stockbroker for his "personal customers." Nor can the Amended Complaint be fairly read to infer that any of the Defendants acted in a capacity as a broker for DSI's defrauded customers. The common law of Ohio and the law of various other jurisdictions examined simply do not foist upon these Defendants—employees of a broker-dealer—the same legal duty of care, as an agent, bailee or fiduciary, as it did upon Donahue as the customers' stockbroker. *See Thropp, supra* at 820. The allegations asserted in the Amended Complaint, without more, simply do not state facts upon which relief under a negligence theory can be granted against the Defendants.[4]

Indeed, absent some special relationship[5], there is no "good Samaritan"

---

**4.** By his response to the Motion, the Trustee notes his willingness to further amend the complaint, if necessary, to allege that Defendants Schumacher and Mayer handled client money, took phone calls from customers and participated in customer meetings. The Plaintiff states he should be given leave to add the following paragraphs:

25. Ms. Schumacher and Ms. Mayer worked in Mr. Donahue's office for DSI customers whose accounts he managed. They took phone calls from customers, set appointments for customers to meet with Mr. Donahue and gathered information for customer meetings. They transcribed Mr. Donahue's notes of meeting where he agreed to "credit" surrender charges to customers' money market or bond fund accounts.

26. They handled customer funds, including checks made out to SGD for the fictitious money market fund and bond fund, and made entries in customer accounts showing "rebates" of surrender charges to customers' money market and bond fund accounts. They processed withdrawals from the fictitious money market and bond funds.

27. Ms. Schumacher and Ms. Mayer knew that customer funds for the fictitious money market and bond fund were payable to SGD, not to a registered mutual fund as for all legitimate investments of customer funds. They gave customers' checks for the money market fund and the bond fund to Mr. Donahue instead of processing the checks the same as checks for legitimate investments of customer funds.

These additional allegations, even if true, would still not support a claim for relief under any of the theories espoused by the Trustee. *See Yanacos v. Lake County, Ohio*, 953 F.Supp. 187, 191 (N.D.Ohio 1996). ("When deciding a motion brought pursuant to Rule 12(b)(6), the inquiry is substantially limited to the contents of the complaint, though matters of public record, orders, items appearing in the record, and attached exhibits also may be taken into account.") The fact remains that the Trustee makes no allegation that the Defendants either knew about Donahue's illegal enterprise or knowingly participated in those schemes. The Trustee has not cited any legal precedent supporting the novel proposition that employees working in a brokerage firm in similar positions as the three Defendants are obligated by a common law duty to customers to discover and/or prevent the fraud of a fellow employee.

**5.** Ohio recognizes several special relationships that give rise to a fiduciary duty. These include: a psychotherapist to a third party harmed by his/her patient, *Estates of Morgan v. Fairfield Family Counseling Center*, 77 Ohio St.3d 284, 673 N.E.2d 1311 (1997); an invitee of a business owner, *Simpson v. Big Bear Stores Co.*, 73 Ohio St.3d 130, 652 N.E.2d 702 (1995); a parent to prevent the abuse of their

duty to report someone else's fraudulent activities. *Simpson v. Big Bear Stores Co.*, 73 Ohio St.3d 130, 133, 652 N.E.2d 702 (1995); *IIT v. Cornfeld*, 619 F.2d 909, 927 (2d Cir.1980). More specific to this case, employees do not possess a duty to a third party whom they deal with only on behalf of their employer. *Grosvenor Properties Ltd. v. Southmark Corp.*, 896 F.2d 1149, 1154 (9th Cir.1990)(applying California law).

▆ Because the common law only imposes a duty of care for customers upon stockbrokers and not upon the employees of a broker-dealer, an element essential for making out a prima facie case of legal negligence against the Defendants is lacking from the Amended Complaint.[6] Thus, under no set of facts extrapolated from the Amended Complaint can the Defendants be held liable for damages on a claim predicated upon common law negligence.

## C. Breach of Fiduciary Duty

The second theory upon which the Plaintiff seeks to recover—that the Defendants breached a fiduciary duty to DSI's defrauded customers—suffers from the same defects as the first. The Plaintiff asserts that Defendants Schumacher and Mayer were fiduciaries for customers because they actually handled customer funds as "registered representatives" and because their conduct violated NASD rules and DSI's compliance manual. Further, Plaintiff argues that Chitwood had a common law duty under the rubric of NASD rules and certain provisions of the compliance manual as the firm's compliance principal to ensure that all DSI customer accounts were safely maintained. Plaintiff rationalizes that because the Defendants breached these well-defined duties they can be sued for damages stemming from injuries suffered by customers in connection with Donahue's fraud which the Defendants failed to detect or prevent.

▆ As to the claim for breach of fiduciary duty, the Ohio Supreme Court has stated:

A claim of breach of a fiduciary duty is basically a claim of negligence, albeit involving a higher standard of care. And in negligence actions, we have long held that " 'one seeking recovery must show the existence of a duty on the part of the one sued not to subject the former to the injury complained of, a failure to observe such duty, and an injury resulting proximately therefrom.' "

Indeed, a fundamental principle of the law of *all* torts is that a legal right must exist and that this right must be violated in order to warrant redress. "[T]here can be no redress for some claimed tor-

child, *Hite v. Brown*, 100 Ohio App.3d 606, 654 N.E.2d 452 (1995); from an employer to an employee, *Slagle v. White Castle Systems, Inc.*, 79 Ohio App.3d 210, 607 N.E.2d 45 (1992) and from a police officer to a prisoner in his/her custody, *Clemets v. Heston*, 20 Ohio App.3d 132, 485 N.E.2d 287 (1985). In addition, the Restatement (Second) of Torts § 314A (1965) lists four other special relationships giving rise to a fiduciary duty. These include: the duty owed by an innkeeper to a guest; a common carrier to a passenger; an individual who voluntarily takes custody of another under circumstances which prevent the other individual from protecting himself and; a possessor of land who leaves it open for public use.

**6.** Alternatively, even if such a duty exists, Ohio law does not recognize a negligence action for purely economic damages absent contractual privity between the parties. *See Floor Craft Floor Covering, Inc. v. Parma Community General Hosp. Assoc.*, 54 Ohio St.3d 1, 3, 560 N.E.2d 206 (1990); *Laurent v. Flood Data Serv., Inc.*, 146 Ohio App.3d 392, 401, 766 N.E.2d 221 (2001). In this case, there are no allegations that the Defendants had any contractual privity with the customers of DSI and SGD.

tious act unless the party (or parties) sought to be charged was guilty of some act that the law regards as wrongful." *Strock v. Pressnell*, 38 Ohio St.3d 207, 216–17, 527 N.E.2d 1235 (1988) (citations omitted).

Plaintiff relies heavily upon three cases for the proposition that the Defendants owed a duty of care to the customers of DSI. However, none of the these cases serves as a pronouncement of Ohio law and the Court is unpersuaded that the Ohio Supreme Court would, if presented with a similar fact pattern, adopt the "holdings" in these cases as the rule in this State. The cases relied upon by the Trustee are short on analysis and fail to draw upon any state (or federal) law in support of their cursory conclusions that a duty of care may be owed by a broker-dealer's employees generally to customers. *See Hardy v. Walsh Manning Securities, L.L.C.*, 341 F.3d 126 (2d Cir.2003) (Arbitration award in favor of customer against chief executive officer of brokerage firm vacated where award was premised exclusively upon respondeat superior and known facts did not support the claim. The Second Circuit, in dicta, merely left open the possibility that, on remand, the arbitration panel might find the defendant to be liable on some alternative-and unstated-basis); *Sanders v. Gardner*, 7 F.Supp.2d 151 (E.D.N.Y.1998) (confirming arbitration award in favor of customer against compliance-principal who also served as supervisor over broker who defrauded customer); *Reynolds v. M. Rimson & Co.*, No. H–94–2894, 1996 WL 617258 (S.D.Tex. Feb.13, 1996) (president/sole-shareholder of broker-dealer, *not* employee, was liable to customer in negligence for failure to detect/prevent fraud of broker).

Under Ohio law the only duty remotely related to a fiduciary one that an employee owes is the duty to act "in the utmost good faith and loyalty toward his ... employer." See *Berge v. Columbus Community Cable Access*, 136 Ohio App.3d 281, 326, 736 N.E.2d 517 (1999) (quoting *Connelly v. Balkwill*, 160 Ohio St. 430, 440, 116 N.E.2d 701 (1954)). However, nothing in Ohio law establishes a fiduciary relationship between a broker-dealer's employees and the firm's clients that would enable a client to sue the employee for an alleged breach of that duty to the firm. By contrast, if an employee breaches his duty of loyalty, an employer may sue the employee for the breach. *See Berge*, 136 Ohio App.3d at 326, 736 N.E.2d 517. Any claims arising from the Defendants' alleged breach of duty that are akin to a fiduciary duty, therefore, would have belonged to DSI and not to DSI's customers or SIPC as subrogee of those customers' claims. As such, the Plaintiff lacks the requisite standing to sue the Defendants since no law allows a DSI customer to sue an employee by asserting rights belonging to the employer or to remedy injuries resulting from a breach of a duty of loyalty owed by the employee to the employer. Moreover, it does not appear that the Plaintiff, by further amending the complaint, can overcome the legal impediment imposed by this reasoning since this Court has previously determined that the Trustee stands in the shoes of DSI, the employer, and as such is barred from bringing a claim for negligence against a third party under the doctrine of *in pari delicto*. *In re Donahue Securities, Inc.*, 304 B.R. 797 (Bankr.S.D.Ohio 2003).

The Court, accordingly, is obliged to dismiss the claims asserted in the Amended Complaint against the Defendants Mayer, Schumacher and Chitwood for breach of a fiduciary duty to its cus-

tomers.[7]

## D. Negligent Supervision

Finally, the Plaintiff contends that Chitwood, as compliance principal for DSI, is liable, severally, for the losses which resulted from Donahue's fraudulent schemes because he did not properly supervise or monitor Schumacher, Mayer and Donahue.

■ Under Ohio law, the elements of a negligent supervision action are the same as those applied in a negligent hiring or retention action. *Browning v. Ohio State Hwy. Patrol*, 151 Ohio App.3d 798, 811, 786 N.E.2d 94 (2003). Those elements are: (1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employer's act or omission causing plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries. *Peterson v. Buckeye Steel Casings*, 133 Ohio App.3d 715, 729, 729 N.E.2d 813 (1999).

■ The issue that creates a particular problem for the Trustee under a negligent supervision theory is the fact that Chitwood, even as compliance principal for DSI, was still only an employee, *not* the actual employer in this instance. In the Amended Complaint, Chitwood is alleged to have negligently supervised Schumacher, Mayer and Donahue. However, Donahue is also alleged to have been the sole shareholder and president of DSI. Under these circumstances, Chitwood had no authority whatsoever to discipline or fire Donahue.

The Amended Complaint also charges that much of the work performed by Schumacher and Mayer was in furtherance of Donahue's fraudulent schemes. Donahue, however, as sole shareholder and president of the firm, had ultimate authority over which employees at DSI were hired, retained or fired, including Chitwood. Under no set of circumstances would Chitwood have been able to make any adverse employment decisions related to Schumacher and Mayer without Donahue's consent. Given these facts also, Chitwood was in no position merely as Schumacher and Mayer's intermediate supervisor to discipline them for a failure to stop or prevent Donahue, their actual employer, from completing the illegal schemes in which he had ordered them to participate. *See Petty v. Mahoning Women's Centre, Inc.*, 1995 WL 70129, No. 93 C.A. 32, 1995 Ohio App. LEXIS 576 (Ohio Ct.App. Feb. 15, 1995) ("[A] claim for negligent supervision presumes that the defendant possessed a requisite amount of control over the alleged tort-feasor."); *see also In re Gutfreund*, 51 S.E.C. 93, 1992 WL 362753 (1992)(The mere title of compliance officer does not indicate an employee has supervisory responsibilities.); *In re Huff*, 50 S.E.C. 524, 1991 WL 296561 (1991) (A person's lack of authority to discipline, fire or demote another employee is indicative of the fact that the person is not a supervisor.)

Based on the foregoing, the Amended Complaint cannot support a claim of negligent supervision against Chitwood.

---

7. This is not to say that the Defendants have no culpability related to Donahue's schemes and will not face punishment. Defendants may have to face, if they have not already, serious disciplinary consequences from one or more of the regulatory agencies for failing to prevent, detect and report Donahue's fraudulent activities. *See e.g.*, NASD Conduct Rules at www.cchwallstreet.com/nasd/nasd_rules/. However, as the Trustee concedes, such regulations cannot serve as the basis for a private right of action. *See Emmons v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 532 F.Supp. 480, 483 (S.D.Ohio 1982).

## V. Conclusion

Even if the Court were to accept the facts in the Amended Complaint as true and view them in a light most favorable to the Plaintiff, they do not state a claim upon which relief can be granted for negligence or breach of fiduciary duty against the Defendants. None of the Defendants owed a common law duty to customers to discover or prevent Donahue's fraudulent activity. Moreover, the Amended Complaint fails to state a claim for relief against Chitwood for negligent supervision since Chitwood was not the actual employer and did not have any control over the actions of Donahue, Schumacher or Mayer. For the foregoing reasons, the Motion will be **GRANTED** and the Amended Complaint will be **DISMISSED**. An order to this effect will be entered.