In re Douglas L. LUTZ, Trustee,
Plaintiff/Appellant,

v.

Richard CHITWOOD,
Defendant/Appellee.

No. C–1–05–010.

United States District Court,
S.D. Ohio,
Western Division.

Sept. 6, 2005.

Frederick Jaeger McGavran, Frost & Jacobs, Cincinnati, OH, for Trustee, Plaintiff/Appellant.

Robert Bowman Craig, Taft, Stettinius & Hollister, Covington, KY, for Defendant/Appellee.

## ORDER

HERMAN J. WEBER, Senior District Judge.

### I. Introduction

This is an appeal from a decision issued on October 7, 2004, by the United States Bankruptcy Court for the Southern District of Ohio in a consolidated liquidation proceeding brought under the Securities Investors Protection Act (SIPA), 15 U.S.C. § 78aaa, et seq. Plaintiff/Appellant Douglas L. Lutz, Trustee, (Trustee) appeals from the Memorandum Decision Granting Defendants' Motion to Dismiss Claims for Negligence, Breach of Fiduciary Duty and Negligent Supervision asserted on behalf of the debtors' estate and the Securities Investors Protection Corp. (SIPC). *See In re Donahue Securities, Inc.*, 318 B.R. 667 (Bkrtcy.S.D.Ohio 2004).

Plaintiff/Appellant is the Trustee of Donahue Securities, Inc. (DSI) and S.G. Donahue & Company, Inc. (SGD). In the liquidation proceeding, the Trustee brought claims for negligence and breach of fiduciary duty against defendant/appellee Richard Chitwood and co-defendants Michelle Schumacher and Sharyn Meyer. The Trustee claims that defendants failed to discover and prevent Stephen Donahue, the President and sole shareholder of DSI and SGD, from converting customer funds and engaging in other misconduct involving customers' funds and securities trading. The Bankruptcy Court held that the Trustee had failed to state a claim for relief against the defendants. The Trustee appeals the Bankruptcy Court's decision only as to defendant/appellee Chitwood.

There is no dispute that the Trustee has standing to assert claims against Chitwood; that the Trustee has paid over $4 million in customer claims from funds advanced by the SIPC, so that the SIPC is subrogated to those customers' claims and the Trustee has standing to assert the SIPC's subrogation claims in this adversary proceeding; and the Trustee may also assert claims against defendant in this adversary proceeding as a bailee of customer property.

### II. Issues on appeal

The Trustee states the issues on which he bases this appeal as follows: (1) The Bankruptcy Court erred by making findings of fact on a Rule 12(b)(6) motion; (2) Chitwood had a duty to DSI's customers to supervise Donahue; (3) Ohio recognizes a claim for negligent supervision; (4) Chitwood's duty may be proved by securities

rules and regulations; and (5) As DSI's Compliance Principal, Chitwood had a duty to supervise.

## III. Request for oral argument

Defendant/appellee Chitwood requests oral argument. The Court has determined, in compliance with Bankruptcy Rule 8012, that the facts and legal arguments are adequately presented in the briefs and record and that oral arguments would not significantly aid the Court in deciding the matter. The Court therefore denies the request for oral argument.

## IV. Factual allegations and claims

The following allegations are made in the amended complaint filed in the Bankruptcy Court on October 9, 2003: DSI is a corporation that was registered with the Securities Exchange Commission (SEC) as a broker-dealer to engage in the securities business. DSI is a member of the SIPC. SGD is an Ohio corporation that was incorporated to conduct business other than the securities business. Donahue was the President and sole shareholder of both DSI and SGD. Although SGD was not licensed as a broker-dealer, Donahue operated it in such a manner that its business and that of DSI were one and the same with common employees, common customers, and common offices.

Donahue was licensed by the National Association of Securities Dealers (NASD) as a Registered Representative.[1] He was also a Registered Principal of DSI as defined by relevant NASD regulations. Defendants Chitwood, Schumacher, and Mayer were employees of DSI. They were licensed by NASD as Registered Representatives as defined by relevant NASD regulations. Chitwood was also DSI's Registered Compliance Principal as defined by relevant NASD regulations.

DSI was a broker-dealer for the purchase, sale, and redemption of mutual funds, variable annuities, and other securities. DSI and its employees, including Donahue, Chitwood, Schumacher, and Mayer, were agents and fiduciaries for DSI's customers. As such, they stood in a special relationship with DSI's customers and owed them a duty to use reasonable care and to exercise the skills and diligence necessary to protect customers' interest. It was foreseeable that DSI would suffer loss, and that DSI's customers would suffer loss of cash and securities as well as loss of interest, appreciation, and surrender charges, if defendants breached their duties as described in the amended complaint. Chitwood, Schumacher, and Mayer are liable to the Trustee on behalf of the Estate of DSI, on behalf of the SIPC as subrogee of customers' claims it has paid, and as bailee of customer property for negligence for breach of defendants' duties.

Donahue, Chitwood, Schumacher, and Mayer were required by law to follow DSI's Compliance Manual and Written Supervisory Polices and Procedures (Compliance Manual), which stated the duties and responsibilities of its Registered Representatives and Registered Principals to DSI. These individuals were also required by law to follow all industry-wide applicable rules and regulations promulgated by the NASD, the SEC, and any other authorita-

---

1. According to the Bankruptcy Court, NASD regulation 1031(b) defines "registered representative" as follows:

 "Persons associated with a member, including assistant officers other than principals, who are engaged in the investment banking or securities business for the member including the functions of supervision, solicitation or conduct of business in securities or who are engaged in the training of persons associated with a member for any of these functions are designated as representatives." See In re Donahue Securities, Inc., 318 B.R. at 676.

**164**

tive source. As DSI's Registered Compliance Principal and as Registered Representative, Chitwood had a duty to DSI and its customers to supervise DSI's Registered Representatives, including Donahue, Schumacher, and Mayer, to assure that they complied with their duties and responsibilities stated in the Compliance Manual and in applicable SEC and NASD rules and regulations. As DSI's Compliance Principal, Chitwood had a duty to DSI and to DSI's customers to monitor and review securities activities and related records of DSI; to personally review the accounts and transactions of all DSI's Registered Representatives, including the accounts and transactions of Donahue, or to delegate such duties to a properly designated supervisor; and to supervise DSI's Registered Representatives to assure that they complied with their duties and responsibilities stated in the Compliance Manual and in applicable SEC and NASD rules and regulations.

Donahue, Chitwood, Schumacher, and Mayer had a duty to DSI and to DSI's customers to know DSI's minimum stated capital requirement. They also had a duty to DSI and its customers to know the rules and regulations governing accounts known as § k(2)(i) accounts.

DSI served as a broker-dealer for non-profit corporations whose employees were participants in investment plans established pursuant to § 403(b) of the Internal Revenue Code (§ 403(b) Plans). A broker-dealer for such Plans receives aggregate contributions from non-profit corporations (§ 403(b) Funds), segregates such contributions for the accounts of individual employee participants, and must remit all such Funds to the employees' designated investments within twenty-four hours of receipt of such funds from the non-profit employer. If a broker-dealer for the § 403(b) Plans does not do so, its minimum stated capital increases to protect the employee-owners of the Funds, and such broker-dealer is required to file periodic reports documenting compliance with additional SEC requirements.

Based on these allegations, the Trustee asserts in the amended complaint that defendants were negligent in the following respects: [2]

(1) Defendants negligently failed to safeguard customer funds: Donahue violated § k(2)(i) of SEC Rule 15c3–3, the Compliance Manual, and proper practice by having § 403(b) Funds made payable to SGD, which was not licensed as a broker-dealer and was not otherwise authorized to receive such funds, depositing them in the "S.G. Donahue DBA Investment Custodial Account" (the "SGD Account"), failing to remit the Funds to employees' designated investments within twenty-four hours of receipt, and building up excess funds (the float), which Donahue then converted to his own use. Chitwood negligently failed to supervise Donahue, and he and Schumacher and Mayer negligently failed to discover and prevent Donahue from depositing § 403(b) Funds in the SGD Account and converting those funds to his own use.

(2) Defendants negligently failed to expose a fictitious mutual fund. Donahue represented to customers that he would invest their money in a non-existent DSI money market fund and in a bond fund, and he

---

**2.** The Court has paraphrased the allegations of the amended complaint in the numbered paragraphs.

delivered copies of checks for the non-existent fund to Schumacher and Mayer so that they could credit the customer's account. Donahue deposited the funds instead into accounts under his control and converted the funds to his own use. Chitwood knew that Donahue was selling a non-existent security but chose to remain silent, and he negligently failed to supervise Donahue and his "off the books" accounts and to discover and prevent Donahue's wrongdoing.

(3) Defendants negligently failed to expose fictitious credits in customers' fictitious "Bond Fund" Accounts. Chitwood negligently failed to supervise the other defendants and negligently failed to discover and prevent Donahue from selling securities without a prospectus in violation of the Compliance Manual and applicable SEC and NASD rules and regulations.

(4) Defendants negligently failed to discover and prevent Donahue from depositing customers' funds in his personal account. Chitwood negligently supervised the other defendants and DSI's customer accounts, and he negligently failed to discover and prevent Donahue from selling fictitious securities and converting the proceeds to his own use.

(5) Defendants negligently failed to discover and prevent Donahue from converting customers' funds. Chitwood negligently supervised the other defendants and negligently failed to discover that DSI did not maintain a legitimate § k(2)(i) account, that Donahue had converted § 403(b) funds to redeem customers' bond funds, and that Donahue had deposited and commingled customer funds designated for the bond fund with § 403(b) Funds and had "repaid" the SGD Account with funds from the Donahue Account.

## V. Related proceedings

In criminal proceedings in this district court arising from Donahue's alleged illegal conduct, Donahue pled guilty to one count of wire fraud by an investment advisor. He was sentenced to 46 months in prison. *See United States v. Stephen G. Donahue,* Case No. CR–1–02–081 (S.D.Ohio), doc. 19; *In re Donahue Securities, Inc.,* 318 B.R. at 671, n. 2. None of the defendants in this case have been charged criminally with any offenses arising from the matters set forth in the amended complaint.

## VI. The Bankruptcy Court's decision

In its decision, the Bankruptcy Court addressed three theories of liability propounded by plaintiff: (1) negligence, (2) breach of fiduciary duty, and (3) negligent supervision as to Chitwood only. The Court determined that defendants could not be held liable under a theory of common law negligence because the common law imposes a duty of care for customers upon stockbrokers but not upon the employees of a broker-dealer. The Court determined that plaintiff likewise could not prevail on a breach of fiduciary duty claim. The Court reasoned that there is nothing in Ohio law that establishes a fiduciary relationship between a broker-dealer's employees and the firm's clients that would enable a client to sue the employee for an alleged breach of that duty to the firm. The Court also found that plaintiff lacks the requisite standing to sue the defendants "since no law allows a DSI customer to sue an employee by asserting rights belonging to the employer or to remedy injuries resulting from a breach of a duty of loyalty owed by the employee to the

employer." Finally, as to the negligent supervision claim, the Court found that, according to the allegations of the complaint, Chitwood was only an employee of DSI who had no authority to discipline or fire Donahue, who is alleged to have been the sole shareholder and President of DSI.

## VII. Appeal from the Bankruptcy Court's decision

The Trustee now appeals from the judgment of the Bankruptcy Court dismissing the claims against Chitwood. The Trustee does not appeal the dismissal of the claims against Schumacher and Mayer. This Court has jurisdiction over the appeal under 28 U.S.C. § 158(a), which grants federal district courts jurisdiction over appeals from the final judgments and orders of bankruptcy courts.

The Trustee asserts that the appeal centers on his claims that as DSI's Compliance Principal, Chitwood had a duty to DSI's customers to supervise Donahue and other Registered Representatives, and to personally review the accounts and transactions of Donahue to assure that customer funds were invested as directed. The Trustee asserts that the ability to supervise and the existence of a fiduciary duty are questions of fact and that the Bankruptcy Court erred by making findings of fact on these issues contrary to the allegations of the amended complaint on a Rule 12(b)(6) motion. The Trustee specifically contends that the Bankruptcy Court erred by making the following findings of fact:

> The issue that creates a particular problem for the Trustee under a negligent supervision theory is the fact that Chitwood, even as compliance principal for DSI, was still only an employee, *not* the actual employer in this instance. In the Amended Complaint, Chitwood is alleged to have negligently supervised Schumacher, Mayer and Donahue. However, Donahue is alleged to have

been the sole shareholder and president of DSI. Under these circumstances, Chitwood had no authority whatsoever to discipline or fire Donahue.

> The Amended Complaint also charges that much of the work performed by Schumacher and Mayer was in furtherance of Donahue's fraudulent schemes. Donahue, however, as sole shareholder and president of the firm, had ultimate authority over which employees at DSI were hired, retained or fired, including Chitwood. Under no set of circumstances would Chitwood have been able to make any adverse employment decisions related to Schumacher and Mayer without Donahue's consent. Given these facts also, Chitwood was in no position merely as Schumacher and Mayer's intermediate supervisor to discipline them for a failure to stop or prevent Donahue, their actual employer, from completing the illegal schemes in which he had ordered them to participate. [citations omitted].

The Trustee disputes these findings by the Bankruptcy Court and claims that Chitwood had a duty to supervise, the extent of which was provided by applicable NASD and SEC rules and regulations. The Trustee alleges that the Bankruptcy Court incorrectly characterized the relationship between Chitwood and Donahue as employee/employer and that this faulty analogy led to the erroneous conclusion that Chitwood had no ability to supervise Donahue. The Trustee contends that the Bankruptcy Court failed to consider that the relationship between Chitwood and Donahue was the "clearly defined relationship of Compliance Principal to Registered Representative." The Trustee alleges that this concept is spelled out in NASD Rule 3010(a)(4), which requires the designation of an appropriately registered principal with the authority to carry out supervisory

responsibilities, and NASD Rule 3010(a)(5), which requires that each registered person be assigned to at least one supervisor. The Trustee argues based on this rule and similar securities regulations that it is irrelevant that Chitwood was an employee of DSI and that Donahue was the sole shareholder and president of DSI since Chitwood's duty to supervise arose from his responsibility as the designated Compliance Principal to supervise Donahue's actions as Registered Representative.

As legal authority for his position, the Trustee relies on several decisions issued by other district courts. The Trustee asserts that in *Javitch v. First Montauk Financial Corp.*, 279 F.Supp.2d 931, 940 (N.D.Ohio 2003), the court implicitly found that the plaintiff had stated a claim under Ohio law for negligent supervision against a broker. The Trustee contends that all of the courts that have considered such a claim have held that "a supervisor employed by a broker-dealer does have a duty to the broker-dealer's customers." As authority for this proposition, the Trustee cites the following cases: *Hardy v. Walsh Manning Sec. LLC*, 2002 WL 2031607 (S.D.N.Y.2002); *Reynolds v. Rimson & Co.*, 1996 WL 617258 (S.D.Tex. 1996); *Sanders v. Gardner*, 7 F.Supp.2d 151 (E.D.N.Y.1998); *Kriel v. Apache Trading Corp.*, No. CIV–87–1690–T (unpublished decision) (W.D.Okla. May 26, 1988) (Exh. F to Trustee's Brief). The Trustee also contends that Ohio recognizes a claim for negligent supervision of employees, children, and athletes, and he argues that given the cases recognizing such a duty and the decision in *Javitch,* there is reason to believe that Ohio courts would recognize a claim against the supervisor of a broker for negligent supervision.

Chitwood counters that this appeal involves purely legal issues, which he has framed as follows: (1) Did Chitwood owe a common law duty to discover and prevent Donahue's criminal actions?; (2) Did he owe a fiduciary duty to DSI customers with whom he had no contact?; and (3) Did he owe a common law duty to supervise Donahue, Schumacher, and Mayer? Chitwood asserts that the Trustee has no cause of action against him because there is no private cause of action for alleged violations of the securities laws, SEC and NASD rules and regulations, and DSI's Compliance Manual. Rather, defendant asserts that as the Bankruptcy Court observed in its decision, those statutes and industry standards are enforced solely by the regulatory agencies. Defendant further argues that industry standards may not be used to establish a duty on his part, but may be offered only as evidence of a standard of care if such a duty is independently imposed upon defendant.

Defendant goes on to argue that the existence of a duty in a negligence action is a question of law for the court to decide and that an employee does not owe a common law duty to prevent his boss's criminal activities. Defendant argues that the allegations of the complaint do not permit a finding that he owed a duty to Donahue's clients because there are no allegations that demonstrate either a direct relationship between defendant and those customers or a special relationship that would impose a duty on defendant to prevent a third party (Donahue) from harming another (Donahue's customers).

In response, the Trustee contends that he has alleged facts to show that defendant's duty as a Compliance Principal to supervise Mr. Donahue in his capacity as a Registered Representative placed defendant in a special relationship with DSI's customers. The Trustee also asserts that he has alleged facts to show that if defendant violated his duty, customers would be

injured. The Trustee denies that he has attempted to fashion a common law duty to supervise based on industry standards and contends that he has properly relied on Sixth Circuit precedent for the limited proposition that "industry standards may be used to define or prove the nature of a legal duty, not to establish that the duty exists."

On the issue of breach of an alleged fiduciary duty, the Trustee argues that whether Chitwood owed a fiduciary duty is a question of fact and that the Bankruptcy Court erred by making factual findings on this issue. The Trustee asserts that his allegations that Chitwood, as Registered Principal and Chief Compliance Officer for DSI, was specifically authorized and required to supervise Donahue, Schumacher, and Mayer, who dealt directly with Donahue's customers, and that it was foreseeable that the customers would suffer loss if Chitwood breached that duty, are sufficient to show that Chitwood was a fiduciary for DSI's customers.

Defendant argues that because there is "no blanket fiduciary duty" owed by Chitwood to DSI's customers, the Trustee was required to plead specific facts that demonstrate the existence of such a duty. Defendant contends that the Trustee has failed to do so.

## VIII. Standard of review

In reviewing the Bankruptcy Court's decision, the district court must apply a *de novo* standard of review to all conclusions of law drawn by the Bankruptcy Court. *In re Eagle Picher Industries, Inc.,* 164 B.R. 265, 269 (S.D.Ohio 1994) (citing *In re Caldwell,* 851 F.2d 852, 857 (6th Cir.1988)). The sufficiency of a complaint is a matter of law. *LRL Properties v. Portage Metro Housing Authority,* 55 F.3d 1097, 1104 (6th Cir.1995). The Bankruptcy Court's determination as to the sufficiency of the

complaint is therefore reviewed by this Court *de novo.*

In order to prevail on a Rule 12(b)(6) motion to dismiss, the movant must demonstrate that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In ruling on a Rule 12(b)(6) motion to dismiss, the Court must accept the allegations of the complaint as true and resolve all doubts in the plaintiff's favor. *Craighead v. E.F. Hutton & Co.,* 899 F.2d 485, 489 (6th Cir.1990); *LRL Properties,* 55 F.3d at 1104 (*quoting Swanson v. Bixler,* 750 F.2d 810, 813 (10th Cir.1984) ("[a]ll well-pleaded facts, as distinguished from conclusory allegations, must be taken as true.")).

## IX. Opinion

### 1. Claim for negligent supervision

#### A. Applicable law

In order to prevail on a negligence claim under Ohio law, the plaintiff must prove the following elements: (1) defendant owed plaintiff a duty, (2) defendant breached that duty, and (3) such breach was the proximate cause of plaintiff's injuries. *Chambers v. St. Mary's School,* 82 Ohio St.3d 563, 565, 697 N.E.2d 198, 200 (1998) (citations omitted). The existence of a duty is ordinarily a question of law. *Mussivand v. David,* 45 Ohio St.3d 314, 318, 544 N.E.2d 265, 270 (1989). The determination of whether a breach of duty occurred and whether such breach was the proximate cause of an injury is generally a question of fact. *Strother v. Hutchinson,* 67 Ohio St.2d 282, 288, 423 N.E.2d 467, 471 (1981).

There is no set formula for determining whether a duty exists. *Mussivand,* 45 Ohio St.3d at 318, 544 N.E.2d at 270. Duty has been described as "the court's 'expression of the sum total of

those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.'" *Id.* (quoting Prosser, Law of Torts (4 Ed.1971) pp. 325–26). Considerations that may justify imposition of a duty in a particular situation are "the guidance of history, our continually refined concepts of morals and justice, the convenience of the rule, and social judgment as to where the loss should fall." *Id.* (citing Prosser, *Palsgraf Revisited* (1953), 52 Mich.L.Rev. 1, 15).

 Ohio recognizes a claim for negligent supervision. An underlying requirement in actions for negligent supervision is that the employee acting within the scope of his employment is individually liable for a tort or guilty of a claimed wrong against a third person, who then seeks recovery against the employer. *Strock v. Pressnell,* 38 Ohio St.3d 207, 217, 527 N.E.2d 1235, 1244 (1988). As stated by the Bankruptcy Court, the elements of a negligent supervision claim under Ohio law are the same as those of a negligent hiring or retention claim. *In re Donahue Securities,* 318 B.R. at 678 (citing *Browning v. Ohio State Hwy. Patrol,* 151 Ohio App.3d 798, 811, 786 N.E.2d 94 (2003)). Those elements are: (1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employer's act or omission causing plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries. *Peterson v. Buckeye Steel Castings,* 133 Ohio App.3d 715, 729, 729 N.E.2d 813 (1999).

## B. Plaintiff has failed to state a claim for negligent supervision

Initially, the Court finds that in determining whether plaintiff has stated a cause of action for negligent supervision, it is not necessary to address defendant's argument that there is no private cause of action for alleged violations of the securities laws, SEC and NASD Rules and Regulations, and DSI's Compliance Manual. The Trustee does not bring this action against Mr. Chitwood under those laws and provisions, but instead asserts claims against Mr. Chitwood under the Ohio common law. The issue before the Court is therefore whether the Bankruptcy Court correctly determined that the amended complaint fails to state a claim for relief against Chitwood under the Ohio common law of negligence.

 As an additional preliminary matter, the Court agrees with the Trustee that the existence or extent of an individual's supervisory authority over another in many cases will turn on the facts of the parties' particular situation and the specific nature of the individuals' relationship. The Court finds, however, that a determination of whether the Trustee has stated a claim for negligent supervision in this case does not require the resolution of any factual issues. Rather, for the reasons set forth below, the allegations of the amended complaint, if accepted as true, demonstrate as a matter of law that the Trustee is unable to prove any facts in support of his negligent supervision claim that would entitle him to relief against Chitwood.

First, Chitwood clearly cannot be held liable for negligent supervision of Donahue to the extent that Donahue acted through SGD. Chitwood is not alleged to have been an employee of SGD, and there is no allegation that Chitwood had any involvement in transactions conducted by or through SGD.

Insofar as the Trustee seeks to hold Chitwood liable for any wrongful activity that was conducted through DSI, the Trustee has not cited any Ohio cases that hold, or by extension support the proposition, that a broker-dealer's employee generally owes a duty of care to his firm's customers

simply by virtue of the employee's position as Compliance Principal. Nor do the cases from other jurisdictions on which the parties rely support this proposition. Absent any such authority, the Court is not persuaded that the Ohio Supreme Court would recognize a duty of care running from a Compliance Principal to his employer's customers when the employee is not alleged to have had any direct dealings with those customers.

Moreover, Ohio law recognizes a claim for negligent supervision of an *employee* by an *employer* based upon the employee's incompetence and the employer's actual or constructive knowledge of such incompetence. In this case, however, the Trustee does not seek to hold an employer liable for an employee's incompetence or wrongdoing but instead seeks to hold an employee, Chitwood, liable for the wrongdoing of the President and sole shareholder of his employer, DSI. None of the cases cited by the Trustee support the proposition that an employee may be held liable under Ohio law for the incompetence or wrongdoing of an officer and sole shareholder of the company by which the employee is employed. Even if Donahue could be considered to be a fellow employee of Chitwood, the Trustee has not cited the Court to any cases where an Ohio court has recognized a claim of negligent supervision against an individual employee for the incompetence of a co-employee. Thus, Ohio law does not support the imposition of liability under the facts alleged in the amended complaint.

In addition, the cases from other courts that the Trustee has cited do not convince this Court that the Ohio Supreme Court, if presented with facts similar to those alleged here, would extend the law in the manner urged by the Trustee. The Trustee's assertion that "All of the courts that have considered such a claim have held that a customer has a cause of action against a supervisor for negligently supervising a registered representative" is simply not accurate. Nor do the cited cases support the imposition of liability on defendant based on the facts alleged in the amended complaint. Rather, the cases cited by the Trustee differ from the case before the Court in critical respects as explained below.

First, the case of *Hardy v. Walsh Manning Securities LLC,* 2002 WL 2031607 (S.D.N.Y.2002), involved the chief executive officer of a brokerage firm rather than a mere supervisory employee, and the court found that there was substantial evidence suggesting that the CEO had played a significant part in the stock manipulations giving rise to the suit, so that the arbitrator's award of damages to the petitioner was reasonable. The court made statements in dicta, however, that indicate that the court would not draw the same conclusion as to an employee of a brokerage firm who was not directly involved in the alleged wrongdoing. Specifically, the court stated that "vicarious personal liability cannot be imposed on individual supervisors based solely on the conduct of their underlings, when both are fellow employees of a common employer." *Id.* Rather, the court recognized that "the doctrine of respondeat superior holds *employers* vicariously liable for the acts of employees, but 'it does not apply to executive personnel who fall into the category of employees.'" *Id.* (citing *Patton v. Dumpson,* 498 F.Supp. 933, 943 (S.D.N.Y.1980)). Moreover, the district court's decision upholding the arbitration award in favor of the plaintiff and against the officer was vacated by the appellate court on the ground that the judgment of liability against the individual defendant was based upon principles of respondeat superior and the evidence did not provide "a colorable justification for this conclusion." *See Hardy v. Walsh Manning Securities, L.L.C.,* 341 F.3d 126, 131 (2d Cir.2003).

Similarly, the decision in *Reynolds v. M. Rimson & Co.*, 1996 WL 617258 (S.D.Tex. 1996) does not support the Trustee's position. In *Reynolds*, the court issued a judgment against both the company defendant and the individual defendant, determining that the failure of the individual defendant and his company to supervise the account executive under the facts and circumstances presented there constituted negligence and gross negligence and that the company was liable for the account executive's unauthorized trades and conversion of funds under the doctrine of respondeat superior. The court in *Reynolds* specifically determined, however, that in addition to being the wrongdoer's supervisor, the individual defendant there was the President, Compliance Officer, and sole shareholder of the company and had the power to control the actions of the account executive. The allegations of this case do not indicate that Chitwood occupied à similar position of authority in relation to Donahue. To the contrary, the Trustee's allegations demonstrate that it was Donahue who, as sole shareholder of DSI, occupied a position comparable to that held by the wrongdoer's supervisor in *Reynolds*.

In *Sanders v. Gardner*, 7 F.Supp.2d 151, 160 (E.D.N.Y.1998), the court found that there was a proper factual basis upon which the arbitrators could have found the defendant liable for wrongdoing by a trader in that the defendant was listed as a Vice President, General Securities Principal, of the company and was included within the supervisory personnel in the compliance manual; he was the direct supervisor of the individual who had executed all of the client's trades; he was also listed as the principal assigned to carry out the company's supervisory and compliance obligations with respect to certain business segments; he was one of the original owners of the predecessor company; and upon sale of the company, he had assumed the role of manager of the trading department,

or head trader. By contrast, there are no allegations in the amended complaint to the effect that Chitwood was an officer of DSI or allegations that show that Chitwood had direct supervisory authority over Donahue such as that which the defendant in *Sanders* exercised over the trader in that case. To the contrary, according to the allegations of the amended complaint, the only supervisory authority that Chitwood possessed was derived from his position as Registered Representative and Compliance Principal. The decision in *Sanders* does not support the proposition that an individual employee can be held liable for the actions of the sole shareholder of his firm simply by virtue of holding such positions.

The decision in *Javitch*, 279 F.Supp.2d at 940, which the Trustee cites for the proposition that an Ohio federal district court "has already recognized negligent failure to supervise," likewise does not advance the Trustee's position that Chitwood can be held liable for negligent supervision of Donahue. The Trustee asserts that the court in *Javitch* held that "the plaintiff had stated a claim under Ohio law for negligent supervision against the designated supervisor of a Registered Representative." In contrast to this case, however, the individual defendant in *Javitch* had acted as both the broker and supervisor who had approved the opening of the subject account and who had himself conducted activity on the accounts that the customer had opened, leading the court to find that the defendant's "conduct in opening and conducting all three accounts raises questions of fact as to whether the broker breached duties to the customer in light of the industry and brokerage firm standards." *Id.* at 936, 940. The other defendant in *Javitch* was the brokerage firm that employed the broker. The court declined to grant summary judgment against the firm because there were genuine issues of material fact regarding the company's super-

vision of its registered broker, who was also the branch office manager. *Id.* The decision in *Javitch* sheds no light on the question of whether an individual employee may be held liable for failure to supervise another employee, or a principal of a company, when the employee is not alleged to have had any direct involvement with the customers, transactions or accounts involved in the suit.

Finally, the decision in *Kriel v. Apache Tranding Co.* is much too cursory to offer any guidance on the existence of a duty on Chitwood's part under the particular circumstances alleged in the amended complaint.

The Court finds no other support in the case law cited by the parties for the proposition that a broker-dealer's employee may owe a duty of care to his firm's customers simply by virtue of his position as the firm's Compliance Principal. Absent any such authority, the Court is not persuaded that the Ohio Supreme Court would recognize a duty of care if confronted with this scenario, particularly since doing so would expose any individual who occupies the position of Compliance Principal to liability for wrongful acts committed by another individual in the firm, regardless of whether the Compliance Principal had any involvement in the wrongdoing or any authority to direct or control the activities of the employee or principal engaged in the illicit activity. Accordingly, the Court finds that the Bankruptcy Court did not err in finding that the Trustee has failed to state a claim for negligent supervision against defendant Chitwood.

### 2. Breach of fiduciary duty

#### A. Applicable law

A "fiduciary" is "a person having a duty, created by his undertaking, to act *primarily for the benefit of another* in matters connected with his undertaking." *Strock v. Pressnell,* 38 Ohio St.3d 207, 216,

527 N.E.2d 1235, 1243–244 (1988) (citing *Haluka v. Baker,* 66 Ohio App. 308, 312, 34 N.E.2d 68, 70 (1941)). A broker is a fiduciary who stands in a special relationship to a client and owes the client a duty to use reasonable care and to act in good faith. *Thropp v. Bache Halsey Stuart Shields,* 650 F.2d 817, 819 (6th Cir.1981) (citing *Garl v. Mihuta,* 50 Ohio App.2d 142, 361 N.E.2d 1065 (1975); *Henricksen v. Henricksen,* 640 F.2d 880 (7th Cir. 1981)).

A claim that a fiduciary has breached a duty that it owes is "basically a claim of negligence, albeit involving a higher standard of care." *Strock,* 38 Ohio St.3d at 216, 527 N.E.2d at 1243–244 (citations omitted). As in negligence actions, "one seeking recovery must show the existence of a duty on the part of the one sued not to subject the former to the injury complained of, a failure to observe such duty, and an injury resulting proximately therefrom." *Id.*

#### B. The Trustee has failed to state a claim for breach of fiduciary duty

There are no specific allegations in the amended complaint, which if accepted as true, establish that Chitwood stood in a fiduciary relationship to customers of DSI based on any direct dealings with those customers. Thus, the issue before the Court is whether the allegations of the amended complaint are sufficient to establish a fiduciary relationship between Chitwood and DSI's customers generally by virtue of Chitwood's position as DSI's Registered Compliance Principal. The Trustee has not cited any Ohio cases or other cases finding a fiduciary duty on the part of a brokerage firm's Compliance Principal to the firm's customers with whom the Compliance Principal had no direct dealings. Nor do any of the authorities that the Trustee has cited lead the Court to believe that the Ohio Supreme Court

would find the existence of a fiduciary duty on the part of such an employee based on his obligation to ensure compliance by members of his firm with applicable securities rules and regulations and other procedures. Accordingly, plaintiff's breach of fiduciary claim as alleged in the amended complaint must fail.

## X. Conclusion

The Trustee has not alleged sufficient facts to state a cause of action for negligent supervision or breach of a fiduciary duty on the part of defendant/appellee Chitwood. It is therefore **ORDERED** that the Bankruptcy Court's decision granting the Trustee's motion to dismiss is **AFFIRMED**. The appeal is **DISMISSED** with prejudice.

**IT IS SO ORDERED.**